## STEPHEN BAYER *v.* SHOWMOTION, INC.
### (SC 18227)

Rogers, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued December 3, 2008—officially released July 7, 2009

*Mark R. Carta*, with whom were *Kathryn A. Sherman* and, on the brief, *Arthur K. Engle*, for the appellant (defendant).

*Donna M. Lattarulo*, for the appellee (substitute plaintiff).

*Opinion*

ROGERS, C. J. In this summary process action, the defendant, Showmotion, Inc., appeals[1] from the judgment of immediate possession of certain real property (property) in favor of the substitute plaintiff, 2 Meadow Street, LLC.[2] The threshold issue in this appeal concerns the trial court's denial of the defendant's motion to dismiss the action for lack of subject matter jurisdiction

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] While this action was pending before the trial court, the named plaintiff, Stephen Bayer, transferred title to the property to 2 Meadow Street, LLC, a limited liability company of which Bayer is the sole member. The limited liability company subsequently was substituted as the plaintiff. For clarity, we refer to Bayer by name and to 2 Meadow Street, LLC, as the plaintiff.

due to a defect in the notice to quit.[3] The defendant further claims that the present case should have been dismissed, or in the alternative stayed, because a prior pending action brought by the defendant against the named plaintiff, Stephen Bayer, barred this summary process action. Finally, the defendant claims that the trial court's factual findings with respect to its special defenses were clearly erroneous.[4] We agree that the trial court's findings were clearly erroneous and, accordingly, reverse the judgment of the trial court.

The record reflects the following relevant facts and procedural history. On March 11, 1996, the defendant and Bayer executed a written agreement for the lease of certain premises within a building owned by Bayer and located at 2 Meadow Street in Norwalk.[5] According to the terms of the lease, the defendant agreed to pay monthly rent in exchange for possession of 30,700 square feet of space in the building. Pursuant to paragraph 32 (C) of the lease, the defendant obtained a right of first refusal in the event that Bayer received from a bona fide third party an offer to purchase the property.[6]

---

[3] In its brief, the defendant raises an additional claim challenging the trial court's denial of a motion to dismiss due to Bayer's loss of standing following his transfer of the property to the plaintiff. The defendant withdrew that claim at oral argument before this court, essentially conceding that the trial court properly substituted the plaintiff in place of Bayer.

[4] The defendant raised several special defenses to the plaintiff's summary process complaint, including claims of breach of contract, breach of a covenant of good faith and fair dealing and the doctrines of equitable estoppel and equitable nonforfeiture. On appeal, the defendant challenges as clearly erroneous several of the trial court's factual findings with respect to the various special defenses.

[5] On May 31, 2001, the defendant and Bayer executed an amendment to the March 11, 1996 agreement. For convenience, we refer to the original March 11, 1996 agreement and the May 31, 2001 amendments, collectively, as the lease.

[6] Paragraph 32 (C) of the lease provides: "After [April 30, 2002], and during the remainder of this lease, the landlord has the absolute right to sell the property to any bona fide purchaser. If during the remainder of the term of this lease and after the expiration of the option period, and provided that the lease is effective and tenant is not in default, the landlord receives an

On September 1, 2005, Bayer notified the defendant in writing that he had received an offer to purchase the property from a third party. The defendant timely responded by notifying Bayer, in writing, that it wished to purchase the property under the same terms and conditions set forth in the third party offer and by submitting a substantial deposit. On January 19, 2006, after failing to reach a final agreement with the defendant for the sale of the property, Bayer notified the defendant that he was withdrawing the property from the market. The defendant thereafter notified Bayer of its belief that Bayer was in default of the lease and filed a complaint against Bayer in the Superior Court claiming breach of contract and seeking specific performance of Bayer's promise to convey the property. See part II of this opinion.

On March 21, 2006, after the defendant had filed its breach of contract action, Bayer served the defendant with a notice to quit possession of the premises. Bayer thereafter initiated this summary process action alleging, inter alia, that the defendant had failed to pay timely rent for the month of March, 2006.

On April 27, 2006, the defendant filed a motion to dismiss, or in the alternative, to stay, the present summary process action, arguing that the prior pending action doctrine barred Bayer from pursuing his claims. On June 1, 2006, the court denied the defendant's motion to dismiss.

Bayer subsequently transferred ownership of the property to the plaintiff in January, 2007. On May 15,

offer to purchase the property, he shall communicate to the tenant, in writing, the terms and conditions of the offer to purchase.

"The tenant shall have ten . . . business days from the receipt of the terms and conditions of the offer to purchase from the landlord, to declare his written intent to the landlord to purchase the property at the same purchase price as offered by the bona fide purchaser. The tenant's written letter of intent must be accompanied by a nonrefundable deposit in the total amount of . . . [$100,000]."

2007, the defendant filed a second motion to dismiss. In that motion, the defendant claimed that the court lacked subject matter jurisdiction over Bayer's complaint because: (1) Bayer no longer had standing to pursue his claim; and (2) a facial defect in the notice to quit precluded the court from assuming jurisdiction ab initio. Following oral argument on May 17, 2007, the trial court denied the defendant's second motion to dismiss. In addition, the court, sua sponte, ordered the plaintiff to be substituted in place of Bayer.

The plaintiff thereafter filed a substitute complaint identifying itself as the owner of the premises.[7] After a trial on the merits of the substitute complaint, the court rendered judgment of immediate possession in favor of the plaintiff. This appeal followed.

I

We begin by addressing the defendant's claim that the trial court lacked subject matter jurisdiction. See *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 85, 952 A.2d 1 (2008). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Bloomfield* v. *United Electric, Radio & Machine Workers of America, Connecticut Independent Police Union, Local 14*, 285 Conn. 278, 286, 939 A.2d 561 (2008).

The defendant first claims that a defect in the March 21, 2006 notice to quit deprived the trial court of subject

---

[7] The substitute complaint repeated Bayer's allegation in count one that the defendant had failed to pay timely rent for the month of March, 2006. The plaintiff further alleged in two separate counts that the defendant had no right or privilege to occupy the premises and that any right or privilege the defendant originally had to occupy the premises had terminated. Because the trial court rendered judgment for the plaintiff as to the first count, the court made no findings with respect to the plaintiff's second and third counts.

matter jurisdiction over the plaintiff's summary process action at its inception. Specifically, the defendant claims that the trial court lacked jurisdiction because the notice to quit had failed to conform strictly to the timeline set forth in General Statutes § 47a-23 (a). We disagree.

The following facts and procedural history are relevant to the defendant's claim. Bayer served the defendant with the notice to quit on March 21, 2006. The notice, however, directed the defendant to quit possession of the premises "on or before March 25, *2005*." (Emphasis added.) In other words, the defendant received the notice almost one full year after the quit date identified in the notice. In its May 15, 2007 motion to dismiss, the defendant argued that the notice failed to comply with the timeline set forth in § 47a-23 (a) because Bayer had not served it at least three days prior to the date specified in the notice, and, therefore, the trial court could not assume jurisdiction over Bayer's complaint.

The trial court denied the defendant's motion to dismiss. The court reasoned that the date discrepancy was a result of a scrivener's error and that the defendant "was clearly on notice that the plaintiff landlord was proceeding on the notice to quit as containing the date to quit as March 25, 2006 and not March 25, 2005," given the fact that "[a]ll of the [other] dates contained within the notice to quit were . . . 2006" and that "all of the pleadings, and specifically paragraph five of the complaint, [state] that . . . the notice to quit was served on March 21, 2006, to quit possession on or before March 25, 2006 . . . ." The court further noted that the defendant admitted in its answer that it had received the notice to quit and had procrastinated its challenge to the adequacy of the notice for more than one year until the eve of trial. Finally, the court concluded: "The defendant . . . never had any doubt . . . that the

landlord was commencing this summary process action based on a proper notice to quit which required the tenant to remove himself on March 25, 2006 . . . ."

We previously have articulated our standard of reviewing challenges to the trial court's subject matter jurisdiction in a summary process action on the basis of a defect in the notice to quit. "Before the [trial] court can entertain a summary process action and evict a tenant, the owner of the land must previously have served the tenant with notice to quit. . . . As a condition precedent to a summary process action, proper notice to quit [pursuant to § 47a-23] is a jurisdictional necessity." (Citations omitted.) *Lampasona* v. *Jacobs*, 209 Conn. 724, 728–29, 553 A.2d 175, cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d 590 (1989); see also *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 5, 931 A.2d 837 (2007). This court's review of the trial court's determination as to whether the notice to quit served by the plaintiff effectively conferred subject matter jurisdiction is plenary. *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, supra, 5.

We further observe that "[s]ummary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Internal quotation marks omitted.) Id., 5–6.

Section 47a-23, which governs the form and delivery of notices to quit possession in summary process actions, provides in relevant part that, when an owner

or lessor desires to obtain possession of its land or building and the lease pertaining to those premises has terminated for nonpayment of rent, the owner or lessor "(a) . . . shall give notice to each lessee or occupant to quit possession or occupancy of such land [or] building . . . at least three days . . . before the time specified in the notice for the lessee or occupant to quit possession or occupancy. . . ." The notice must be delivered in writing to the lessee or occupant. General Statutes § 47a-23 (b) and (c).

The defendant argues that a strict construction of the three day timeline set forth in § 47a-23 (a) compels us to conclude that the defect in the notice to quit deprived the trial court of subject matter jurisdiction. The construction of § 47a-23 (a), however, is not at issue in this case. Rather, we must decide whether the trial court properly construed the notice to quit to contain a mistake with regard to the March 25, 2005 date and found that the proper three day notice requirement had been intended and understood by the parties. That determination is governed by a more liberal standard as set forth in General Statutes § 52-123 and the case law construing that statute.

Section 52-123 provides: "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court." Further, we have stated that "[§] 52-123 is a remedial statute [that] . . . must be liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 396, 655 A.2d 759 (1995). The statute "replaces the common law rule that deprived courts of subject matter jurisdiction whenever there was a misnomer or misdescription in an original writ,

summons or complaint." Id., 396–97. It prevents "the recurrence of the inequities inherent in eighteenth century common law that denied a plaintiff's cause of action if the pleadings were technically imperfect." Id., 399.

In invoking § 52-123, this court has explained: "It is not the policy of our courts to interpret rules and statutes in so strict a manner as to deny a litigant the pursuit of its complaint for mere circumstantial defects. . . . Indeed, § 52-123 . . . protects against just such consequences, by providing that no proceeding shall be abated for circumstantial errors so long as there is sufficient notice to the parties. . . . The accepted policy is to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. . . . The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure." (Citation omitted; internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 558, 848 A.2d 352 (2004).

Section 52-123 is applicable to pleadings in summary process actions. The Appellate Court previously has applied the statute to excuse circumstantial defects in notices to quit. See *Rock Rimmon Grange #142, Inc.* v. *The Bible Speaks Ministries, Inc.*, 92 Conn. App. 410, 414–15, 885 A.2d 768 (2005) (correcting misnomer); *Western Boot & Clothing Co.* v. *L'Enfance Magique, Inc.*, 81 Conn. App. 486, 492, 840 A.2d 574 (same), cert. denied, 269 Conn. 903, 852 A.2d 737 (2004). The question, therefore, is whether the defect in the notice to quit in this case is circumstantial or substantive.

In determining whether a defect is merely circumstantial and not substantive, courts have considered, inter alia, whether the defendant had actual notice of the institution of an action and whether the defendant was in any way misled to its prejudice. See, e.g., *Rocco* v. *Garrison*, supra, 268 Conn. 558 (invoking § 52-123 where "defendant concede[d] that she knew of the [pleading] error when she filed her answer and special defense and even informed the plaintiffs' counsel of the mistake," and, otherwise, "the record contain[ed] no evidence that the defendant lacked a proper understanding of the complaint and, consequently, could not have participated fully in the litigation for that reason"); *Andover Ltd. Partnership I* v. *Board of Tax Review*, supra, 232 Conn. 397; see also *State* v. *Gillespie*, 92 Conn. App. 143, 149–50, 884 A.2d 419 (2005) (circumstantial defects have included mistaken use of Practice Book form, failure to designate apartment number in writ, erroneous reference in appeal papers to next term instead of next return day and missing signature on affidavit attached to writ). Invoking those considerations, we have applied § 52-123 to excuse defects in pleadings even when those defects implicate the trial court's subject matter jurisdiction. See, e.g., *Caruso* v. *Bridgeport*, 285 Conn. 618, 626–29, 941 A.2d 266 (2008) (plaintiff's failure to cite in his complaint statute providing exclusive remedy in election dispute did not deprive court of subject matter jurisdiction where plaintiff complied with procedural requirements of statute and defendants were aware of true nature of action and were not prejudiced by failure to cite statute); *Andover Ltd. Partnership I* v. *Board of Tax Review*, supra, 400–401 (plaintiff's naming of board of tax review as defendant instead of town, as required by General Statutes § 12-117a, did not deprive court of subject matter jurisdiction where town was served, had actual notice of action, filed answer and other documents with court,

attempted settlement and did not contest defect in citation until litigation had been pending for more than three years); cf. *Rogozinski* v. *American Food Service Equipment Corp.*, 211 Conn. 431, 434, 559 A.2d 1110 (1989) (§ 52-123 "is used to provide relief from defects in the text of the writ itself but is not available to cure irregularities in the service or return of process").

In light of the foregoing authority, we conclude that the trial court properly scrutinized the notice to quit and found that the defendant had received actual notice at least three days before "the time specified in the notice . . . ." See General Statutes § 47a-23 (a). Specifically, the court found that other dates in the notice to quit and in the plaintiff's complaint provided actual notice of the date on which the defendant was requested to vacate the premises, and the trial court expressly found that there was no confusion surrounding that date. Moreover, the defendant's failure to raise the defect in the notice to quit for more than one year while it raised other defenses to the complaint demonstrates that it was not prejudiced by the defect in the notice to quit. Finally, the defendant does not argue that it had insufficient time to quit possession of the premises—only that the notice, literally read, did not provide it with such. In fact, the plaintiff did not file its complaint until April 18, 2006, thirty days after serving the defendant with its notice to quit. We conclude, on the basis of the specific facts presented in this case, that the trial court properly found the defect in the notice to quit to be merely circumstantial. Accordingly, the trial court properly assumed jurisdiction over Bayer's complaint.

II

Having determined that the trial court had subject matter jurisdiction to decide this case, we turn to the defendant's claim that the trial court nonetheless should have dismissed, or in the alternative stayed, the action

on the basis of the prior pending action doctrine.[8] Specifically, the defendant argues that the prior pending action doctrine bars the present summary process action because, in its prior pending complaint against Bayer, the defendant is seeking specific performance of its agreement, pursuant to its right of first refusal, to purchase the subject property from Bayer. The plaintiff

---

[8] The trial court denied the defendant's motion to dismiss "for the reasons stated in the [plaintiff's] objection . . . ." Those reasons included the defendant's failure to submit supporting affidavits as to facts not apparent on the record, namely, the allegations in the prior pending complaint that Bayer had breached the lease by refusing to convey the property to the defendant in accordance with paragraph 32 (C). We conclude, however, that the defendant's failure to submit an affidavit in support of the allegations made in the prior pending complaint provided an improper basis on which to deny its motion to dismiss. Whether the defendant has any evidence to support its allegations in a prior pending action is irrelevant to the issue that was before the trial court, namely, whether, in fact, those allegations had been made in a prior pending action and whether that prior pending action had been brought to adjudicate the same underlying rights of the parties.

Moreover, this court previously has stated that "[a] motion to dismiss may . . . raise issues of fact and would, therefore, require a . . . hearing [to determine the facts]." (Internal quotation marks omitted.) *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983); see also *Henriquez* v. *Allegre*, 68 Conn. App. 238, 248 n.15, 789 A.2d 1142 (2002) ("[i]f a motion to dismiss turns on disputed issues of fact, an evidentiary hearing must be held to afford the parties an opportunity to present evidence and to cross-examine adverse witnesses" [internal quotation marks omitted]). In the absence of such a hearing, we will accept all undisputed facts for the purpose of determining whether the trial court properly denied the defendant's motion to dismiss. See *Golodner* v. *Women's Center of Southeastern Connecticut, Inc.*, 281 Conn. 819, 826, 917 A.2d 959 (2007).

In the present case, the defendant attempted to demonstrate the similarities between the two actions by attaching a copy of the prior pending complaint to its April 27, 2006 motion; see Practice Book § 10-29 (b); and by attempting to submit evidence in the form of a certified copy of the prior pending complaint, at the hearing on its motion. Moreover, the plaintiff never has disputed the existence or contents of the prior pending complaint. Finally, the trial court properly could have taken judicial notice of the contents of the prior pending file. See *Pepe* v. *Pepe*, 38 Conn. Sup. 730, 730–31, 462 A.2d 7 (1983). Thus, we conclude that the trial court improperly disregarded the contents of the prior pending file in denying the defendant's motion to dismiss, and, accordingly, we will address the merits of the defendant's claim.

counters that the trial court properly denied the motion to dismiss the summary process action because the two actions do not seek the same remedy—"[t]he [p]laintiff seeks immediate possession of the [p]remises in the [summary process] action while the [defendant's prior pending complaint] seeks specific performance of an alleged right to purchase the [p]roperty." We agree with the defendant that its prior pending complaint seeks to adjudicate the same underlying rights of the parties as the present summary process action, but we ultimately conclude that the trial court properly addressed those issues in the context of the present summary process action.

The following additional facts are not in dispute. Paragraph 32 (C) of the lease provides in relevant part: "If during the remainder of the term of this lease . . . and provided that the lease is effective and the tenant is not in default, the landlord receives an offer to purchase the property, he shall communicate to the tenant, in writing, the terms and conditions of the offer to purchase.

"The tenant shall have ten . . . business days from the receipt of the terms and conditions of the offer to purchase from the landlord, to declare his written intent to the landlord to purchase the property at the same purchase price as offered by the bona fide purchaser. The tenant's written letter of intent must be accompanied by a nonrefundable deposit in the total amount of . . . [$100,000]."

In its prior pending complaint against the plaintiff, the defendant alleges that, on August 31, 2005, the plaintiff received an offer to purchase the property from a bona fide third party purchaser and that the plaintiff communicated to the defendant its acceptance of the terms and conditions set forth in the offer. The defendant further alleges that on September, 1, 2005, it timely

exercised its rights under the lease agreement by notifying the plaintiff of its intent to purchase the property and submitting a $100,000 deposit. The defendant also alleges that, at all relevant times, it has been ready, willing and able to purchase the property. Finally, the defendant alleges that the plaintiff breached the parties' lease agreement by failing to convey the property to the defendant. The defendant seeks a remedy ordering specific performance of the lease and directing the plaintiff to convey the property to the defendant for the same price and on the same terms as set forth in the offer from the third party.

In its answer to the plaintiff's complaint in this summary process action, the defendant raised the special defense of breach of contract (first special defense); see footnote 4 of this opinion; and a counterclaim, both of which, for purposes of our analysis, repeat verbatim the allegations set forth in the defendant's prior pending complaint. The defendant's counterclaim sought the same remedy, specific performance, that the defendant had requested in its prior pending complaint.[9]

Before we address the defendant's claim that the summary process action should have been dismissed under the prior pending action doctrine, we first must articulate the relevant standard of review. We have stated that "[t]he prior pending action doctrine permits the court to dismiss a second case that raises issues currently pending before the court. The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for

---

[9] On December 21, 2006, the trial court granted Bayer's motion to dismiss the defendant's counterclaim on the basis of the prior pending action doctrine. Although Bayer also moved to dismiss the special defenses, the trial court denied the motion because Bayer had replied to the special defenses before he filed the motion to dismiss. See Practice Book §§ 10-6 and 10-7.

bringing the second, and, therefore, it must be oppressive and vexatious. This is a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 247 Conn. 196, 216, 719 A.2d 465 (1998); see also *Halpern* v. *Board of Education*, 196 Conn. 647, 652–53, 495 A.2d 264 (1985).

"The policy behind the prior pending action doctrine is to prevent unnecessary litigation that places a burden on our state's already crowded court dockets." (Internal quotation marks omitted.) *Beaudoin* v. *Town Oil Co.*, 207 Conn. 575, 588, 542 A.2d 1124 (1988). The rule, however, is not one "of unbending rigor, nor of universal application, nor a principle of absolute law . . . ." (Internal quotation marks omitted.) Id., 584. Accordingly, the existence of claims that are virtually alike does not, in every case, require dismissal of a complaint. See *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 297, 580 A.2d 1212 (concluding on basis of equitable principles that count of subsequent action improperly dismissed despite fact that allegations in that count virtually identical to allegations in prior pending action), cert. denied, 217 Conn. 803, 584 A.2d 471 (1990); *Quinebaug Bank* v. *Tarbox*, 20 Conn. 510, 514 (1850) (general rule does not prevail where it appears second action is not vexatious, but is brought for good cause); see also *BCBS Goshen Realty, Inc.* v. *Planning & Zoning Commission*, 22 Conn. App. 407, 409, 577 A.2d 1101 (1990) (flexibility of prior pending action doctrine permits dismissal of prior action, as opposed to subsequent action). We recognize that this statement of the scope of the doctrine's application, on the one hand, provides that the existence of claims that are virtually alike does not require dismissal in every case; see *Cumberland Farms, Inc.* v. *Groton*, supra, 247 Conn. 216–17; *Quinebaug Bank* v. *Tarbox*, supra, 514; while also suggesting that

the doctrine is *always* applicable where the two actions are virtually alike, and in the same jurisdiction. *Cumberland Farms, Inc.* v. *Groton*, supra, 216.

This language in our case law appears to have its genesis in the case of *Hatch* v. *Spofford*, 22 Conn. 485, 494 (1853), in which this court stated that the doctrine "is not a rule of unbending rigor, nor of universal application, nor a principle of absolute law,—it is rather a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction." In *Hatch*, this court further recognized that "a second suit is not, of course, to be abated and dismissed as vexatious, but all the attending circumstances are to be first carefully considered, and the true question will be, what is the aim of the plaintiff? . . . The only certain rule on this subject . . . is, where the parties are the same and the second suit is for the same matter, cause and thing, or the same object is to be attained, as in the first suit and in the same jurisdiction, the second shall abate and be dismissed . . . ." Id., 494–95.

On the basis of this language, we conclude that the trial court must determine in the first instance whether the two actions are: (1) *exactly* alike, i.e., for the same matter, cause and thing, or seeking the same remedy, and in the same jurisdiction; (2) virtually alike, i.e., brought to adjudicate the same underlying rights of the parties, but perhaps seeking different remedies; or (3) insufficiently similar to warrant the doctrine's application. In order to determine whether the actions are virtually alike, we must examine the pleadings—in this case, both complaints and the defendant's answer and special defenses in the summary process action—to ascertain whether the actions are brought to adjudicate "the same underlying rights" of the parties. (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, supra, 247 Conn. 217. The trial court's conclu-

sion on the similarities between the cases is subject to our plenary review. See *Caruso* v. *Bridgeport*, supra, 285 Conn. 627 (applying plenary standard of review to trial court's legal conclusion that plaintiff's complaint properly stated cause of action). If the two actions are exactly alike or lacking in sufficient similarities, the trial court has no discretion. In the former case, the court must dismiss the second action, and in the latter instance, the court must allow both cases to proceed unabated. Where the actions are virtually, but not exactly alike, however, the trial court exercises discretion in determining whether the circumstances justify dismissal of the second action.

In support of its claim that the two actions are virtually alike, the defendant principally relies on the decision of the Appellate Session of the Superior Court in *Pepe* v. *Pepe*, 38 Conn. Sup. 730, 462 A.2d 7 (1983). In *Pepe*, the Appellate Session affirmed the trial court's judgment dismissing the plaintiff's summary process action "for the reason that [n]o issues raised by [that] action are outside the comprehension of the earlier [action]" in which the defendants sought to be declared the owners of the subject premises by virtue of a resulting trust. (Internal quotation marks omitted.) Id. The Appellate Session concluded that the prior pending action doctrine required dismissal because the subject matter of both complaints "involve[d] a [factual] dispute between the parties as to which of them [held] title to the premises." Id., 731.

The plaintiff, on the other hand, principally relies on the Appellate Court's subsequent decision in *Yarbrough* v. *Demirjian*, 17 Conn. App. 1, 549 A.2d 283, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988). In *Yarbrough*, the parties had executed a bond for deed providing for the sale of premises owned by the plaintiff. Id., 2. The closing never took place, but almost three years after executing the bond for deed, the defendant

moved onto the premises and began paying the plaintiff's mortgage, interest and taxes. Id. When the plaintiff later tried to evict the defendant by summary process, the defendant claimed as a special defense that the action was barred because of his prior pending action against the plaintiff for specific performance of the bond for deed. Id., 2–3. The Appellate Court affirmed the trial court's judgment in favor of the plaintiff and denying the defendant's special defense. Specifically, the court stated: "Because the relationship between the parties [as found by the trial court] was one of landlord and tenant, the plaintiff was correct to bring a summary process action to recover possession of the premises. . . . Summary process is aimed at deciding the simple question of who is entitled to possession. . . . In seeking specific performance of the bond for deed, the defendant claims that he has an enforceable right to the title to the premises. The two suits clearly did not seek a determination of the same issue." (Citations omitted.) Id., 3–4; see also *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 753, 830 A.2d 711 (2003) ("[t]his court has elucidated . . . that title to property and possession of that property are separate questions").

We conclude that the plaintiff and the court in *Yarbrough* improperly focus their analysis on the narrow question of whether the prior pending action sought the same *remedy* as the summary process action. The applicability of the prior pending action doctrine does not turn on whether the two actions seek the same remedy; see *Gaudio* v. *Gaudio*, supra, 23 Conn. App. 296; but, as we have stated, "whether they are brought to adjudicate the same underlying rights." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, supra, 247 Conn. 216.

In resolving the broader inquiry into the underlying rights that the two actions seek to adjudicate, our deci-

sion in *State* v. *Lex Associates*, 248 Conn. 612, 621–22, 730 A.2d 38 (1999), is instructive. In *Lex Associates*, the state of Connecticut entered a lease agreement for a piece of property owned by the defendant. Id., 615. Pursuant to the lease agreement, the state notified the defendant of its intent to exercise an option to purchase the subject property. Id., 616. On the scheduled date of the closing, the state tendered the purchase price provided by the lease agreement. Id. The defendant, however, did not attend the closing. Id.

The state promptly filed a complaint seeking specific performance of the option clause in the lease agreement. Id. During the pendency of that action, the state remained in possession of the subject property and continued to make payments to the defendant. Id. The court thereafter granted the state's motion for summary judgment and rendered judgment granting specific performance of the purchase option. Id., 617. More importantly, the court allocated the state's pendente lite payments as a setoff to the purchase price of the property. Id.

On appeal, this court observed that "[o]nce the state had properly exercised its option and had properly tendered the purchase price to [the defendant], the state became the equitable owner of the [subject] property. Its ownership rights superseded and replaced its former leasehold obligations. That result follows from the logic of the situation. A lessor cannot retain a continued right to lease payments when those payments were made subsequent to the lessor's unexcused refusal to accept a proper tender of payment in full. Otherwise, any lessor who regretted the terms of an option contract could disregard the exercise of the option and continue to collect rents until the end of the lease. In other words, the defaulting lessor could reap an economic gain from its own misconduct.

"Nothing in our law supports such a construction of the relationship between a lessor who contractually provides an option to purchase and a lessee who properly exercises its option rights. If such a lessor refuses proper tender of payment, a likely result . . . is that the former lessee and present equitable owner will remain in possession of the property pending the rendering of a judgment of specific performance. As we held in *Heyman* v. *CBS, Inc.*, 178 Conn. 215, 220, 423 A.2d 887 (1979), a person who validly exercises an option and properly tenders the option price has duly performed all of the conditions to be performed on its part, and as of that date became the equitable owner of the property. We went on to hold that an equitable owner of real property had no further obligation to make rental payments." (Internal quotation marks omitted.) *State* v. *Lex Associates*, supra, 248 Conn. 621–22; id., 622 (noting also that right to stop rental payments upon proper exercise of option need not be expressed in contract); see also *Francis T. Zappone Co.* v. *Mark*, 197 Conn. 264, 267–68, 497 A.2d 32 (1985) ("Under the doctrine of equitable conversion . . . the purchaser of land under an executory contract is regarded as the owner, subject to the vendor's lien for the unpaid purchase price, and the vendor holds the legal title in trust for the purchaser. . . . A binding sales agreement such as a valid bond for deed passes equitable title, under the doctrine of equitable conversion, upon its execution." [Citations omitted; internal quotation marks omitted.]).

In light of our decisions in *Heyman* and *Lex Associates*, an examination of the pleadings in both the present summary process action and the defendant's prior pending action reveals that the summary process case was brought to resolve the same underlying rights of the parties. First, although "[t]he ultimate issue in a summary process action is the right to possession"; (internal quotation marks omitted) *Tinaco Plaza, LLC* v. *Free-*

*bob's, Inc.*, 74 Conn. App. 760, 766–67, 814 A.2d 403, cert. granted, 263 Conn. 904, 819 A.2d 840 (2003) (motion to dismiss granted February 4, 2004); "a trial court must necessarily resolve the factual claims asserted in support of the claim for possession." *Carnese* v. *Middleton*, 27 Conn. App. 530, 535, 608 A.2d 700 (1992); see also *Pepe* v. *Pepe, supra*, 38 Conn. Sup. 730–31 (prior pending action doctrine applied because subject matter of both actions involved same factual dispute). In the present summary process case, the key issue raised in the plaintiff's complaint was whether the plaintiff was entitled to collect rent from the defendant for March, 2006. That issue, however, would be resolved if the court determined, in the defendant's prior pending action, that the defendant had acquired equitable title to the property prior to March, 2006, thus eliminating its obligation to pay further rent under the lease. See *State* v. *Lex Associates, supra*, 248 Conn. 621–22; *Heyman* v. *CBS, Inc., supra*, 178 Conn. 220.

Our conclusion is bolstered by the fact that when the trial court in the present summary process case rendered judgment in favor of the plaintiff, thereby rejecting the defendant's special defenses in the summary process action, it necessarily adjudicated the underlying rights of the parties in the defendant's prior pending action. During the trial on the merits of the plaintiff's summary process complaint, the plaintiff raised an objection on relevancy grounds to certain evidence that tended to support the defendant's allegations in its special defenses. The plaintiff argued, consistent with its position in opposition to the defendant's previous motion to dismiss, that the evidence was not relevant to the issue before the trial court, namely, whether the defendant was obligated to pay rent for March, 2006. Citing *State* v. *Lex Associates, supra*, 248 Conn. 622, the trial court concluded that the defendant's special defenses "can be heard by this court and will

become a proper res judicata in the [prior pending case]."

In light of the fact that the defendant raised the same allegations in its first special defense that it had raised in its prior pending action against Bayer, we conclude that the claims in the prior pending action and the present summary process case are virtually alike and resolve the same underlying issues between the parties. See *Cumberland Farms, Inc.* v. *Groton*, supra, 247 Conn. 216; see also *Nielsen* v. *Nielsen*, 3 Conn. App. 679, 683, 491 A.2d 1112 (1985) (because of public interest in avoiding unnecessary litigation, prior pending action doctrine may apply where plaintiff in second action can, as defendant in first action, properly assert counterclaim). The claims in the two actions, however, were not exactly alike because they sought different remedies. In its prior pending complaint, the defendant is seeking title to the property, while the plaintiff seeks possession as its remedy in the present summary process action. See *Yarbrough* v. *Demirjian*, supra, 17 Conn. App. 3–4.

Because we have concluded that the two actions were virtually alike, we next must determine whether the trial court exercised proper discretion in denying the defendant's motion to dismiss the summary process action. First, we observe that "although a motion to dismiss is the proper vehicle to raise the issue of a prior pending action, the doctrine does not truly implicate subject matter jurisdiction." *Guadio* v. *Gaudio*, supra, 23 Conn. App. 294; see also *Halpern* v. *Board of Education*, supra, 196 Conn. 652 n.4; *In re Jessica M.*, 71 Conn. App. 417, 427, 802 A.2d 197 (2002) (declining to review claim raising prior pending action doctrine for first time on appeal, because subject matter jurisdiction not implicated). Thus, the trial court was not without subject matter jurisdiction to decide the defendant's special defenses. In addition, the defendant does not

allege, and we do not find, any prejudice that resulted from having the trial court decide the defendant's claim in the context of the present summary process action, rather than in the context of its prior pending action. The defendant was given the opportunity to litigate fully its claim before the trial court in the present summary process action. Further, the fact that the present summary process action offers a remedy to the plaintiff that is not available in its defense of the prior action, although not dispositive; see *Gaudio* v. *Gaudio*, supra, 296; weighs against dismissal of the present action. See *Farley-Harvey Co.* v. *Madden*, 105 Conn. 679, 683, 136 A. 586 (1927) (while law is careful to screen defendant from oppression and vexation, it is equally impartial, even indulgent, in permitting plaintiff to seek redress by pursuing several remedies at same time, if reasonable and necessary). Finally, dismissal of the present summary process action at this stage in the proceedings would defeat the policy behind the prior pending action doctrine, namely, "to prevent unnecessary litigation that places a burden on our state's already crowded court dockets." *Beaudoin* v. *Town Oil Co.*, supra, 207 Conn. 588; see also *Edgewood Village, Inc.* v. *Housing Authority*, 54 Conn. App. 164, 167–68, 734 A.2d 589 (1999) (filing of subsequent action identical to one that previously was dismissed rendered moot plaintiff's appeal from dismissal of original action because, under prior pending action doctrine, reinstatement of original action afforded no practical relief). It would no longer serve the interests of judicial economy for this court to direct the trial court to dismiss or stay this case pending the outcome of the defendant's prior pending action. Accordingly, we conclude that the trial court properly denied the defendant's motion to dismiss under the circumstances presented in this case, notwithstanding our agreement with the defendant that its claims were virtually alike and adjudicated the same underlying rights of the parties.

## III

Because the trial court properly considered the issues presented in the present summary process action, we now address the defendant's final claim that the trial court's oral findings[10] on the merits of the defendant's special defenses were clearly erroneous. Specifically, the trial court determined that there never had been a meeting of the minds between the defendant and Bayer, and found, inter alia, on the basis of that determination, that the defendant had not proven its allegation that it had exercised its option to purchase the property. We agree with the defendant that the court's finding that it had not exercised its option to purchase the property is clearly erroneous.

The following additional facts are relevant to our analysis of the defendant's claim and are not disputed by the parties. On August 31, 2005, Bayer received from

[10] The defendant did not request a written memorandum of decision or a signed transcript of the trial court's oral decision. See Practice Book § 64-1. The defendant's failure in this regard normally would result in the lack of an adequate record for our review. See *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 392–97, 757 A.2d 1074 (2000). This court, however, previously has determined that the record may be adequate when an unsigned transcript contains a sufficiently detailed and concise statement of the trial court's findings. See *Smith* v. *Greenwich*, 278 Conn. 428, 453 n.7, 899 A.2d 563 (2006).

Further, "even though the function of an appellate court is to review findings of fact, not make factual findings, an appellate court can draw [c]onclusions of fact . . . where the undisputed facts or uncontroverted evidence and testimony in the record make the factual conclusion so obvious as to be inherent in the trial court's decision." (Internal quotation marks omitted.) *State* v. *Wilson*, 111 Conn. App. 614, 621–22, 960 A.2d 1056 (2008); see also *State* v. *Mullins*, 288 Conn. 345, 359, 952 A.2d 784 (2008) (conclusions of fact may be drawn on appeal where subordinate facts found by trial court make such conclusion inevitable as matter of law or where undisputed facts or uncontroverted evidence and testimony in record make factual conclusion so obvious as to be inherent in trial court's decision). "In such circumstances, [where] the facts are not in dispute . . . the precise legal analysis undertaken by the trial court is not essential to the reviewing court's consideration of the issue on appeal." (Internal quotation marks omitted.) *Wentland* v. *American Equity Ins. Co.*, 267 Conn. 592, 599 n.7, 840 A.2d 1158 (2004).

Stanley M. Seligson a letter of intent that "set forth the general terms and conditions" under which Stanley M. Seligson Properties would be prepared to enter into a contract with Bayer for the purchase of the property. The general terms and conditions included, inter alia, a purchase price of $4.5 million in exchange for a warranty deed conveying fee simple title to the plaintiff. Seligson's letter explicitly did not condition the purchase of the property on his ability to obtain a mortgage or financing.

Bayer promptly notified the defendant in writing that he had received the letter from Seligson as well as the terms and conditions stated therein. Specifically, Bayer stated: "In accordance with paragraph 32 (C) of the . . . lease, I am hereby providing you with written notice of the terms and conditions of an offer to purchase the . . . property for the net amount of [$4.5 million] from a bona fide purchaser . . . .

"Pursuant to the lease, you have [ten] business days to respond to this offer. If you elect to purchase this property you must notify me in writing no later than the tenth business day after the receipt of this notice . . . . You must also pay the required down payment in accordance with the lease." The defendant timely responded to Bayer's letter by submitting a check in the amount of $100,000 and by notifying Bayer, in writing, that it wished to purchase the property under the same terms and conditions set forth in Seligson's letter.[11] Bayer promptly deposited the check upon receipt.

---

[11] Specifically, the defendant's letter provided in relevant part: "In accordance with [p]aragraph 32 (C) referenced in the lease . . . I am hereby exercising the option to purchase . . . [the property] . . . as provided by the agreement.

"I am hereby agreeing to exercise my intent to purchase the property assuming the same terms, conditions and price of the bona fide offer . . . as expressed and referenced in your letter . . . .

"Attached please find a check in the amount of [$100,000] which will consummate this transaction under the terms of the option to purchase agreement as set forth in the lease . . . ."

The defendant subsequently submitted to Bayer a proposed purchase and sale agreement. The proposed agreement incorporated the essential terms set forth in Seligson's letter, as well as several additional terms that the defendant and Bayer previously had not discussed. Bayer did not sign the defendant's proposed agreement but instead responded with a proposal of his own. On November 9, 2005, the defendant responded by accepting some terms and rejecting other terms set forth in Bayer's proposal and by proposing new additional terms.

On January 19, 2006, after failing to reach a final agreement for the sale of the property, Bayer notified the defendant in writing that he no longer intended to sell the property and was "withdrawing the property from the market." The defendant thereafter notified Bayer of its belief that Bayer was in default of the lease and initiated the prior pending action.

A

Before we delve into the undisputed evidence in support of the defendant's allegation that it had exercised its option to purchase the property, we first set forth some of the legal principles, including our standard of review, that guide our analysis. First, we observe that "[a] right of first refusal is known more technically as a preemptive option, as a right of preemption, or simply as a preemption. A right of pre-emption is a right to buy before or ahead of others; thus, a pre-emptive right contract is an agreement containing all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon specified terms, but . . . only if the seller decides to sell. It does not give the pre-emptioner the power to compel an unwilling owner to sell, and therefore is distinguishable from an ordinary option." (Internal quotation

marks omitted.) *Tadros* v. *Middlebury Medical Center, Inc.*, 263 Conn. 235, 240–41, 820 A.2d 230 (2003).

In this case, the defendant's right of first refusal to purchase the property was conditioned on the occurrence of two events: Bayer's desire to sell the property, and his receipt of an acceptable offer from a bona fide purchaser. See *Smith* v. *Hevro Realty Corp.*, 199 Conn. 330, 334–35, 507 A.2d 980 (1986); *Briggs* v. *Sylvestri*, 49 Conn. App. 297, 303–304, 714 A.2d 56 (1998). Unlike an option, this right of first refusal did not, prior to the fulfillment of these conditions, constitute an offer to sell by Bayer or create in the defendant the power to compel a sale by acceptance. See *Smith* v. *Hevro Realty Corp.*, supra, 335. It merely required Bayer, before he sold the property to some third party, to offer it to the defendant on the same terms he was willing to accept from the third party. See id., 336. Once Bayer notified the defendant of the receipt of the third party's offer, however, the defendant's right of first refusal ripened into an option.[12] See id.

---

[12] Seligson's letter to Bayer explicitly states that it "is not intended to be . . . a contract, an offer, or a counter-offer, the intention of the parties being that no contract shall arise unless and until such time as a formal and definitive [p]urchase and [s]ale [a]greement acceptable to both parties has been completed, executed and delivered." While this language may be relevant to determine Seligson's intent with respect to the formation of a contract between himself and Bayer, it sheds little, if any, light on Bayer's intentions in forwarding to the defendant the terms contained in Seligson's letter. Although the letter contemplated further negotiations between Seligson and Bayer, the fact that Bayer did not complete his negotiations with Seligson prior to submitting the offer to the defendant is a strong indication that Bayer did not consider the additional terms necessary to the defendant's exercise of its preemptive rights. Moreover, a comparison of paragraph 32 (C) with other terms in the lease reveals that those additional terms were unnecessary to the formation of a binding contract for the purchase and sale of the property. Specifically, paragraph 32 (A) of the lease, which had expired on April 30, 2002, granted the defendant an option to purchase the property from Bayer for a purchase price of $3.9 million, with no other terms attached.

Moreover, the language contained in Bayer's letter to the defendant undermines any suggestion that Bayer did not intend to be bound upon the defendant's acceptance. First, Bayer's letter to the defendant characterized

"An option is a continuing offer to sell, irrevocable until the expiration of the time period fixed by agreement of the parties, which creates in the option holder the power to form a binding contract by accepting the offer." Id. "To be effective, an acceptance of an offer under an option contract must be unequivocal, unconditional, and in exact accord with the terms of the option. . . . If an option contract provides for payment of all or a portion of the purchase price in order to exercise the option, the optionee . . . must not only accept the offer but pay or tender the agreed amount within the prescribed time. . . . The determination of the terms and conditions of [the] option contract must be resolved, in the absence of supplementary evidence of the intent of the parties, by reference to the terms of the contract itself." (Citations omitted; internal quotation marks omitted.) Id., 339.

Thus, in order to determine whether the defendant formed a binding contract with Bayer by exercising its option to purchase the property, we must review the terms of the lease to determine whether the defendant's response to Bayer's letter was unequivocal, unconditional, and in exact accord with the terms of the lease. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 109, 900 A.2d 1242 (2006).

"The intent of the parties as expressed in a contract is determined from the language used interpreted in

the terms contained in Seligson's letter as an "offer." Further, Bayer explicitly referenced paragraph 32 (C) of the lease and delineated the actions required by the defendant in order to exercise its "rights under the lease to purchase the property."

the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) Id., 109–10. When the disputed agreement is between sophisticated commercial parties with relatively equal bargaining power, this court is more likely to apply a plenary standard of review. See id., 109.

In the present case, the defendant's right of first refusal is expressed in paragraph 32 (C) of the lease. We conclude that the language in the lease clearly and unambiguously provides that, in order to exercise its right of first refusal, the defendant was required to respond to Bayer's letter: (1) in writing; (2) declaring the defendant's intent to purchase the property at the same purchase price as offered by the bona fide purchaser; (3) within ten business days from the defendant's receipt of the terms and conditions of the offer to purchase from the landlord; and (4) accompanied by a $100,000 nonrefundable deposit. See footnote 6 of this opinion. Thus, once Bayer communicated the terms of Seligson's letter of intent to the defendant, the lease created in the *defendant* the power to form a binding contract by accepting the terms of that offer. See *Smith v. Hevro Realty Corp.*, supra, 199 Conn. 335–36. The trial court acknowledged as much when it stated that

"a very simple response to [Seligson's] letter, which was sent to the [defendant], would have been 'terms accepted, prepare a contract.'" There is no question that the defendant's written response strictly followed the terms set forth in the lease.[13] See *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, supra, 279 Conn. 109–10. The evidence further reveals that the defendant's response was unequivocal and unconditional.

The trial court nonetheless found that there was "no valid exercise of the option to purchase" because there was no meeting of the minds between the parties as to the terms of a final purchase and sale agreement. The court's conclusion misstates the relevant test for the formation of a binding contract.

"Under established principles of contract law, an agreement must be definite and certain as to its terms and requirements." (Internal quotation marks omitted.) *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 51, 873 A.2d 929 (2005). Parties, however, may form a binding contract even if some nonessential terms of their agreement are indefinite or left to further negotiations.[14] Id., 53; see also *Willow Funding Co., L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 843–44, 779 A.2d 174 (2001) (fact that parties engage in further negotiations to clarify terms of their mutual undertakings does not establish time at which their undertakings ripen into enforceable agreement); 17A Am. Jur. 2d 74–75, Contacts § 39 (2004). Although this court previously has

---

[13] Pursuant to paragraph 32 (C) of the lease, the defendant's exercise of the option also was contingent on the lease being in effect and the defendant's lack of default under the other terms of the lease. The parties do not dispute that, at the time the defendant responded to Bayer's offer, the defendant had fulfilled those conditions.

[14] We observe that the terms of the lease included the minimum essential terms required by the statute of frauds for the formation of a binding contract between the defendant and Bayer. See *Heyman* v. *CBS, Inc.*, supra, 178 Conn. 223.

not stated the point explicitly, we agree with the weight of authority that this rule applies with equal vigor where a party exercises an option. See *Patel* v. *Liebermensch*, 154 Cal. App. 4th 373, 390, 64 Cal. Rptr. 3d 608 (2007) (enforceable option contract specifies all essential terms of purchase and sale, such that upon exercise of option, binding and enforceable contract of sale is created), rev'd on other grounds, 45 Cal. 4th 344, 197 P.3d 177, 86 Cal. Rptr. 3d 366 (2008); *Wiley* v. *Tom Howell & Associates, Inc.*, 154 Ga. App. 235, 236, 267 S.E.2d 816 (1980) (option contract requires same degree of definiteness as general contract); *Dante* v. *Golas*, 121 Idaho 149, 152, 823 P.2d 183 (1992) (agreement consummated by exercise of option is subject to all principles and rules with respect to specific performance that apply generally to contracts imposing mutual obligations); *Wolvos* v. *Meyer*, 668 N.E.2d 671, 676 (Ind. 1996) (only essential terms need be included to render real estate option contract enforceable); *Duke* v. *Whatley*, 580 So. 2d 1267, 1273–74 (Miss. 1991) (specific performance on option contract may be granted if option contains all material and essential terms); 71 Am. Jur. 2d 186, Specific Performance § 143 (1973) (agreement consummated by exercise of option subject to all principles and rules with respect to specific performance that apply generally to contracts imposing mutual obligations); see also *International Power Machinery, Inc.* v. *Midwest Energy, Inc.*, 4 F. Sup. 2d 1272, 1274–75 (D. Kan. 1998); *Grover* v. *Jacksonville Golfair, Inc.*, 914 So. 2d 995, 996 (Fla. App. 2005); *Lucey* v. *Hero International Corp.*, 361 Mass. 569, 573–75, 281 N.E.2d 266 (1972); *Connor* v. *Harless*, 176 N.C. App. 402, 406, 626 S.E.2d 755 (2006), cert. denied, 361 N.C. 219, 642 S.E.2d 247 (2007); *Four Eights, LLC* v. *Salem*, 194 S.W.3d 484, 487–88 (Tenn. App. 2005), cert. denied, 2006 Tenn. LEXIS 478 (May 30, 2006).

In Connecticut, the essential terms of a contract for the sale of real property include the parties, a descrip-

tion of the subject of the sale, and the terms of payment, including a basis for determining the total purchase price and the amount, if any, of the purchase money mortgage. See *Suffield Development Associates, Ltd.* v. *Society for Savings*, 243 Conn. 832, 843, 708 A.2d 1361 (1998); *State* v. *Hahn*, 207 Conn. 555, 562, 541 A.2d 499 (1988); *Robert Lawrence Associates, Inc.* v. *Del Vecchio*, 178 Conn. 1, 11, 420 A.2d 1142 (1979); *Turner* v. *Hobson*, 16 Conn. App. 240, 244, 547 A.2d 111 (1988). In this case, the option agreement contained the minimum essential terms of a binding purchase and sale agreement for real estate.

Accordingly, we conclude that the court, in finding that there was no valid exercise of the option agreement, improperly ignored the undisputed fact that the defendant, in accordance with the terms of the lease, unequivocally, unconditionally and timely had exercised its preemptive option. The fact that the parties subsequently were unable to agree on the nonessential terms of the purchase and sale agreement has no bearing on the existence of a binding contract between them. See *Lynch* v. *Davis*, 181 Conn. 434, 440, 435 A.2d 977 (1980) (trial court improperly found that possible impact of unessential terms invalidated written memorandum stating essential terms of contract with reasonable certainty); see also *Patel* v. *Liebermensch*, supra, 45 Cal. 4th 351–52 (parties' conduct subsequent to formation of contract may be relevant in determining which terms they considered essential but few contracts would be enforceable if existence of subsequent disputes were taken as evidence that agreement was never reached); *Creely* v. *Hosemann*, 910 So. 2d 512, 521 (Miss. 2005), citing *Ackerman* v. *Carpenter*, 113 Vt. 77, 82, 29 A.2d 922 (1943) (Once a bilateral contract has been created, the "plaintiff could make proposals either to vary or make more specific the terms of the executory contract without jeopardizing her rights

thereunder. Such proposals made by one party and not accepted by the other would leave the contract exactly as though the proposals had not been made."). We conclude that the undisputed facts presented in this case demonstrate unequivocally that the defendant had formed a binding contract with Bayer by exercising its preemptive option under the lease, and that the court's finding to the contrary was clearly erroneous.

B

Having concluded that the trial court's finding that the defendant had not exercised properly its option to purchase the property was clearly erroneous, we further conclude that the trial court improperly rendered judgment of immediate possession in favor of the plaintiff.

When a tenant exercises an option to purchase the leased premises, a new bilateral contract is created. *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.*, 148 Conn. 21, 25, 166 A.2d 710 (1960) (tenant's exercise of option to purchase in lease resulted in binding bilateral contract obligating landlord to convey title by good and sufficient deed and obligating tenant to accept deed and pay purchase price). It is widely accepted that, upon exercise of the option, the lease is extinguished, and the relationship of landlord and tenant becomes that of vendor and vendee. See *Young* v. *Cities Service Oil Co.*, 33 Md. App. 315, 319–21, 364 A.2d 603 (1976) (collecting cases); *Boothe Financial Corp.* v. *Loretto Block, Inc.*, 97 N.M. 496, 499, 641 P.2d 527 (App. 1982); *Amann* v. *Frederick*, 257 N.W.2d 436, 441 (N.D. 1977); *Angus Hunt Ranch, Inc.* v. *Bowen*, 571 P.2d 974, 979 (Wyo. 1977); see also *Cities Service Oil Co.* v. *Viering*, 404 Ill. 538, 554, 89 N.E.2d 392 (1949); 49 Am. Jur. 2d, Landlord and Tenant § 318 (2006) (citing cases); 51C C.J.S., Landlord and Tenant § 82 (1) (1968). Further, the tenant's new status as vendee carries with it equita-

ble title to the property. See *State* v. *Lex Associates*, supra, 248 Conn. 622 ("person who validly exercises an option and properly tenders the option price has 'duly performed all of the conditions to be performed on its part'" and became equitable owner of property); *Francis T. Zappone Co.* v. *Mark*, supra, 197 Conn. 267–68 (binding sales agreement passes equitable title, under doctrine of equitable conversion, upon its execution); *Society for Savings* v. *Bragg*, 38 Conn. Sup. 8, 13–14, 444 A.2d 919 (1981) ("Under the doctrine of equitable conversion . . . the purchaser of the land under an executory contract is regarded as the owner, subject to the vendor's lien for the unpaid purchase price, and the vendor holds the legal title in trust for the purchaser. . . . The vendor's interest thereafter in equity is in the unpaid purchase price, and is treated as personalty . . . while the purchaser's interest is in the land and is treated as realty." [Citations omitted; internal quotation marks omitted.]), citing *Lanna* v. *Greene*, 175 Conn. 453, 461, 399 A.2d 837 (1978) ("[u]nder the doctrine of equitable conversion a contract for the sale of land vests equitable title in the vendee"). It follows, therefore, that "the lessor cannot recover rent after the option to purchase is exercised, absent an express[ed] [waiver] to that effect." 49 Am. Jur. 2d 343, supra, § 319 (citing cases); see also *State* v. *Lex Associates*, supra, 622, citing *Heyman* v. *CBS, Inc.*, supra, 178 Conn. 224 (equitable owner of real property has no further obligation to make rental payments); 49 Am. Jur. 2d 360–61, supra, § 341 (when lease terminated by tenant's proper exercise of option, landlord loses rights it may have held under lease to declare forfeiture).

In light of the foregoing principles, we conclude that the trial court's finding that the defendant had breached the lease by failing to pay timely rent in March, 2006, also was clearly erroneous. No rent was due from the defendant at the time of the alleged breach because

the lease had been terminated upon exercise of the defendant's preemptive option. Accordingly, the plaintiff failed to prove the allegations in its complaint in support of its claim to immediate possession of the premises.[15] With no factual basis to support the trial court's conclusion that the plaintiff was entitled to immediate possession,[16] we conclude that the trial court improperly rendered judgment of immediate possession in favor of the plaintiff.[17]

The judgment is reversed and the case is remanded to the trial court with direction to render judgment in favor of the defendant in the summary process action.[18]

In this opinion the other justices concurred.

---

[15] In its brief, the defendant claimed that the trial court's finding that the defendant was not at all relevant times able to purchase the property was clearly erroneous. At oral argument before this court, the defendant further stated that the defendant's ability to purchase the property was not relevant to the trial court's ultimate finding that the plaintiff was entitled to immediate possession of the premises due to the defendant's failure to pay rent in March, 2006. We agree.

It is true that in order to be awarded specific performance of its contract with Bayer in the prior pending action, the defendant would have had the burden of proving that he was ready, willing and able at all times to purchase the property. See *Frumento* v. *Mezzanotte*, 192 Conn. 606, 616, 473 A.2d 1193 (1984). As we discussed in part II of this opinion, however, the trial court properly considered the special defenses in the context of determining whether the defendant had exercised its option to purchase the property, or instead, the plaintiff was entitled to possession of the premises due to the defendant's failure to pay timely rent in March, 2006. The court's finding that the defendant had failed to prove that it was able to purchase the property was not relevant to the resolution of that issue. Moreover, the trial court explicitly foreclosed consideration of that issue when it dismissed the defendant's counterclaim.

[16] See footnote 7 of this opinion.

[17] Accordingly, we need not address the defendant's remaining claims that the trial court's findings were clearly erroneous with respect to the defendant's various special defenses.

[18] Because this opinion resolves only the issues properly presented in the plaintiff's summary process action, the defendant may continue to litigate its prior pending action in order to resolve all other outstanding issues between the parties. See, e.g., footnote 15 of this opinion.