## HOWARD-ARNOLD, INC. *v.* T.N.T. REALTY, INC.
### (AC 34427)

Gruendel, Sheldon and Flynn, Js.

Argued April 23—officially released September 17, 2013

*Rowena A. Moffett,* for the appellant (plaintiff).

*Michael C. Jankovsky,* for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Howard-Arnold, Inc., appeals from the judgment of the trial court denying specific performance of an option to purchase real property and awarding to the defendant, T.N.T. Realty, Inc., rental use and occupancy payments. Specifically, the plaintiff claims that the court erred in (1) declining to order specific performance of the option and the defendant's obligation under the lease to perform roof repairs; (2) declining to award damages to the plaintiff in lieu of specific performance after finding that the defendant was in breach of the lease agreement; and (3) awarding to the defendant rental and use and occupancy payments. We affirm in part and reverse in part the judgment of the court.

The following facts are relevant to the resolution of the plaintiff's claims. In approximately 1989, Thomas Capobianco and Anthony D'Alto, then owners of a restaurant supply company, formed the defendant corporation, a holding company, with the purpose of purchasing the property located at 47 Railroad Avenue in West Haven (property). The defendant ultimately purchased the property for $1,000,000, subject to a $900,000 mortgage. Capobianco and D'Alto each held an interest in both the restaurant supply company and the defendant corporation until 2000, when the two terminated their business relationship.

As part of the arrangement to divide their interests, Capobianco received a 100 percent interest in the plaintiff corporation and the restaurant supply business, and D'Alto received a 100 percent interest in the defendant corporation and the property. The defendant then leased the property to the plaintiff for a ten year term to terminate in April, 2010, with the plaintiff paying $6000 in monthly rent, due by the 14th of each month. The lease agreement obligated the defendant to perform environmental remediation and to repair, among other deficiencies, the roof of the addition to the building located on the property. The lease agreement also provided to the plaintiff and Capobianco, as guarantor of the lease, an option to purchase the property.

In a letter dated June 7, 2007, the plaintiff and Capobianco notified the defendant that they had "elected to exercise their option to purchase" the property.[1] The letter, however, stated that "before [the plaintiff and Capobianco] can close, two issues must be resolved by [the defendant], namely [its] failure to satisfy [its]

---

[1] The plaintiff and Capobianco, in 2001, began notifying the defendant of their desire to exercise the option to purchase the property, but included in their oral and written communications proposals for negotiations regarding the purchase price of the property.

obligations" under article nine of the lease, which provides for the defendant's obligations with respect to environmental remediation and roof repair. The defendant replied, by letter, that it had completely fulfilled its obligations under the lease. After concluding that "the parties [would] not reach an agreement" regarding the defendant's fulfillment of its lease obligations and the plaintiff's exercise of the option, the plaintiff commenced the present action. In its amended complaint, it alleges, inter alia, three counts of breach of contract and requests damages, specific performance of the defendant's repair and remediation responsibilities under the lease, as well as specific performance of the option. The defendant filed a counterclaim for, inter alia, rental use and occupancy payments for the four month period following the expiration of the lease, during which the plaintiff remained in possession of the property while making partial rent payments.

After a bench trial, the court found that the plaintiff had not properly exercised the option under the terms of the lease because it had not tendered payment, and, accordingly, the court declined to order specific performance. The court also found, under the doctrine of impossibility, that the defendant was excused from performing its obligations under the lease with respect to the roof repairs, and, again did not order specific performance of such obligations. The court did find, however, that the defendant had breached the lease agreement by failing to fulfill its obligations to perform environmental remediation. Nonetheless, it did not fashion an order of damages to compensate the plaintiff for the breach. On the defendant's counterclaim, the court ordered rental use and occupancy payments for the four months during which the plaintiff had made only partial rent payments. From that judgment of the court, the plaintiff now appeals.

## I

## SPECIFIC PERFORMANCE OF THE OPTION TO PURCHASE AND ROOF REPAIRS

The plaintiff claims that the court erred in declining to order specific performance of an option to purchase the leased property and specific performance of roof repairs that the defendant was obligated to perform under the terms of the lease. We disagree.

The following additional facts are relevant to the plaintiff's claims regarding the court's decision to deny the remedy of specific performance. Article thirty-six of the parties' lease agreement provided the plaintiff and Capobianco, as the lease guarantor, with an option to purchase the property. The lease states in relevant part: "During the term of the [l]ease of the [p]remises, [the lessee] and/or [g]uarantor shall each have the right to purchase the [p]remises . . . upon payment of [$223,500] plus the then unpaid balance of the [m]ortgage which [the lessor] may then have on the [p]remises, provided that such balance shall not exceed [$350,000] . . . . Notwithstanding the foregoing, effective on April 14, 2010, [the lessee] and/or [g]uarantor shall each be permitted to purchase the [p]roperty upon the payment of the sum of [$223,500] to [the lessor]."

Pursuant to article nine of the lease agreement, the defendant was obligated to perform environmental remediation of the property.[2] In December, 2000, the defendant provided to the plaintiff a "certificate of completion" from Environmental Consulting & Contracting,

---

[2] The provision of the lease agreement regarding environmental remediation states in relevant part: "On or before April 30, 2001, [the lessor] shall perform environmental remediation, as necessary, attributable to oil and gas leakage existing as of the [c]ommencement [d]ate of this [l]ease, including the removal of the existing underground oil storage tank, and including restoration of the [p]remises disturbed in connection with such environmental remediation as required by law and to substantially the same condition as existed prior to the commencement of the work."

LLC (Environmental), indicating that the underground storage tank grave on the property[3] had been backfilled with soil and that soil samples were within acceptable limits established by the Environmental Protection Agency. Following the receipt of this certificate, in 2001, the plaintiff and defendant engaged in extensive correspondence regarding the plaintiff's potential purchase of the property, but did not come to an agreement with respect to the purchase price or how to allocate the cost of repairs to the roof.

Later in 2001, the plaintiff applied to Citizens Bank for financing to purchase the property. As part of the application process, Citizens Bank conducted an environmental review of the property. It determined that Environmental had used inappropriate testing methods and that it had done no investigation into the extent of the leakage on the property. As a result of its findings, Citizens Bank concluded that in order to proceed with financing, the plaintiff would need to conduct further environmental investigation of the property, including conducting testing of soil samples. The plaintiff sought to have the defendant conduct further remediation, but the defendant refused, asserting that the remediation and testing by Environmental had satisfied its obligations under the lease. The plaintiff never secured financing for the purchase of the property.

Article nine of the lease agreement also obligated the defendant, by October 31, 2000, to "repair the entire roof on the rear section of the [p]remises (i.e. the addition made . . . during 1969), as necessary, such that the leak will be completely fixed during the term of the [l]ease . . . [and to] repair the leaning walls and correct the structural deficiencies (i.e. footings, steelbeams, wall, roof . . . as determined by a licensed

---

[3] The grave formerly contained an underground storage tank system used to hold number two fuel oil.

engineer selected by [the lessor]) in the rear addition
. . . ." To fulfill this obligation, the defendant hired a
contractor, Robert Meena, to conduct the roof repairs.
Despite Meena's efforts to repair the roof, it leaked for
the duration of the lease term.

At trial, the plaintiff called Rafael Aschettino, a structural engineer, to offer expert testimony on the leaking
roof. He testified that the roof leak "arose because
the rear addition was not connected" to the original
building. As explained by Aschettino, in the summer
and winter months, the buildings would move apart,
causing the roof membrane to tear. Aschettino testified
that his recommended solution for the problem would
be to install expansion joints at the juncture between
the addition and the preexisting building.

After the trial, the court found that under the terms
of the lease the plaintiff was required to tender the
purchase price of the property in order to exercise the
option. Because the plaintiff did not do so, the court
declined to order specific performance of the option.
The court also found unavailing the plaintiff's arguments that it was excused from tendering the purchase
price because of the defendant's failure to adequately
perform environmental remediation to the property prevented it from tendering payment and because the
defendant was in breach of the lease with respect to
roof and structural repairs.[4] As to the roof repairs, the
court found that the doctrine of impossibility excused
the defendant's performance of those obligations and,
accordingly, declined to order specific performance.

We next set forth the applicable standard of review of
a court's decision to deny specific performance. "[T]he

---

[4] The defendant's alleged breaching of the lease by failing to fulfill its
obligations to make the structural repairs outlined in article nine are not
the subject of this appeal. We do, however, note that the court found that
the defendant made the required structural repairs and "complied with its
obligations under [article nine]" of the lease.

specific performance remedy is a form of injunctive decree in which the court orders the defendant to perform the contract. . . . The specific performance decree originated in the old equity courts and continues today to be thought of as an equitable remedy, with the usual attributes of such remedies. . . . The availability of specific performance is not a matter of right, but depends rather upon an evaluation of equitable considerations. . . .

"The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . In balancing the equities, the court is not bound by a formula but is free to fashion relief molded to the needs of justice. . . .

"Thus, [o]ur standard of review is whether the trial court abused its discretion. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the . . . discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Gager* v. *Gager & Peterson, LLP*, 76 Conn. App. 552, 560–61, 820 A.2d 1063 (2003).

A

Option to Purchase

We address first the plaintiff's claim that the court improperly declined to order specific performance of the option to purchase the leased property. Specifically, it argues that the court erroneously found that it had not properly exercised the option in accordance with

the lease agreement's terms because it had not tendered payment. We do not agree.

Starting in 2001, the parties engaged in extensive correspondence regarding the plaintiff's purchase of the property. They exchanged several proposals regarding, inter alia, a modified purchase price. After several years of attempting to reach an agreement on the terms of sale, on June 7, 2007, counsel for the plaintiff sent the defendant's attorney a letter stating that it "[had] elected to exercise [the] option to purchase the premises" and requested that the defendant provide to it "a written copy of [the] outstanding balance on [the] mortgage." The letter further explained that "before [the plaintiff and Capobianco] can close, two issues must be resolved by [the defendant], namely [its] failure to satisfy [its] obligations under [article nine of the lease]." The letter concluded by making the following request: "Please speak with your client to determine when [it] will fulfill [its] obligations as called for by the lease so we can prepare to close the transaction." In a letter dated June 15, 2007, the defendant maintained that it had fulfilled its obligations under the lease, but did not respond to the plaintiff's notice that it had "elected to exercise [the] option." The plaintiff, again by letter, requested the outstanding balance on the mortgage and noted his assumption that the "parties [would] not reach an agreement." Enclosed with a responsive letter dated July 18, 2007, the defendant provided to the plaintiff the amortization schedule for the mortgage on the property, which indicated the balance owed at the time of the request, as well as the schedule of payments for the remainder of the mortgage term. Notwithstanding its receipt of the amortization schedule, the plaintiff never secured financing to purchase the property, nor did it ever attempt to make a payment of the purchase price.

The court determined that the language of the option, particularly the language stating that the plaintiff "shall . . . have the right to purchase the [p]remises . . . upon payment of [$223,500] plus the then unpaid balance of the [m]ortgage," required, in order to exercise the option, that the plaintiff make payment of the purchase price, either by tendering the money directly to the defendant or by placing the money into an escrow account. The court, therefore, found that the plaintiff, having failed to tender payment, did not exercise the option in accordance with its terms and, accordingly, declined to order specific performance. The court also found that the defendant's refusal to perform further environmental remediation or repairs did not excuse the plaintiff from the payment requirement of the option, reasoning that because the plaintiff's attempt to exercise the option was conditional, it was not excused from tendering payment. Notwithstanding its findings with respect to tender, the court further found that the plaintiff's letters to the defendant providing notice of its exercise of the option were not unequivocal or unconditional, rather they were "proposals to alter the terms of the option to purchase set forth in the lease."

We turn now to the legal principles that govern the exercise of an option. "An option is a continuing offer to sell, irrevocable until the expiration of the time period fixed by agreement of the parties, which creates in the option holder the power to form a binding contract by accepting the offer. . . . To be effective, an acceptance of an offer under an option contract must be unequivocal, unconditional, and in exact accord with the terms of the option. . . . If an option contract provides for payment of all or a portion of the purchase price in order to exercise the option, the optionee . . . must not only accept the offer but pay or tender the agreed amount within the prescribed time." (Citation omitted; internal quotation marks omitted.) *Bayer* v.

*Showmotion, Inc.*, 292 Conn. 381, 409, 973 A.2d 1229 (2009). "[T]ender is an offer to pay a debt or discharge a duty, and, in the case of a debt, the offer to pay involves, as a general rule, the actual production of the money and the placing of it in the power of the person entitled to receive it." *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.*, 149 Conn. 149, 155–56, 176 A.2d 574 (1961). "The determination of the terms and conditions of [the] option contract must be resolved, in the absence of supplementary evidence of the intent of the parties, by reference to the terms of the contract itself. . . .

"Thus, in order to determine whether the [plaintiff] formed a binding contract with [the defendant] by exercising its option to purchase the property, we must review the terms of the lease to determine whether the [plaintiff's exercise of the option] was unequivocal, unconditional, and in exact accord with the terms of the lease. Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . .

"The intent of the parties as expressed in a contract is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity

in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . When the disputed agreement is between sophisticated commercial parties with relatively equal bargaining power, this court is more likely to apply a plenary standard of review." (Citations omitted; internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, supra, 292 Conn. 409–10.

We first examine the language of the option as set forth in the lease agreement. The language stating that the plaintiff "shall . . . have the right to purchase the [p]remises . . . upon payment of [$223,500] plus the then unpaid balance of the [m]ortgage," is clear and unambiguous. It rests the plaintiff's right to purchase the property on its payment of the purchase price, consisting of the fixed sum stated in the option plus the then unpaid mortgage balance. In other words, the plaintiff's right to purchase the property only arises upon its payment of the purchase price.[5] Given the plain language of the option and the unchallenged factual finding that the plaintiff did not tender payment, the court did not err in finding that the plaintiff failed to exercise the option in accordance with its terms.

The plaintiff argues that the defendant's failure to fulfill its obligations to remediate and repair the property excused the tender requirement under the option agreement. The cases it cites for this proposition, however, concern specific performance of contracts for the sale of land rather than specific performance of option contracts.[6] Yet, "[a]n option contract and a contract of

[5] The plaintiff contends that tender of payment is not required because the option does not prescribe a time by when payment must be made. This is a misreading of the option. The option is not silent to as to when payment is due; rather, under the language of the option, payment is *how* the option is exercised.

[6] A single case cited by the plaintiff, *McCowen* v. *Pew*, 18 Cal. App. 302, 123 P. 191 (1912), decided by an intermediate appellate court in California, involves specific performance of an option contract. Not only is this case not authoritative or instructive on Connecticut law, but it differs from the

sale are in fact two separate and distinct contracts, namely, an option contract, and an agreement to sell. . . . An option, originally, is neither a sale nor an agreement to sell. It is not a contract by which one agrees to sell and the other to buy, but it is only an offer by one to sell within a limited time and a right acquired by the other to accept or reject such offer within such time. . . . The distinction between a contract to purchase and sell real estate and an option to purchase is that the contract to purchase and sell creates a mutual obligation on the one party to sell and on the other to purchase, while an option merely gives the right to purchase within a limited time without imposing any obligation to purchase." (Citation omitted; internal quotation marks omitted.) *Harley v. Indian Spring Land Co.*, 123 Conn. App. 800, 815–16, 3 A.3d 992 (2010). The plaintiff cites no authority, nor are we aware of any, that stands for the proposition that an optionee may be excused, absent repudiation by the optionor, from exercising an option in precise accordance with its terms.[7]

The plaintiff's next contention is that the court improperly declined to order specific performance because it was "ready, willing and able" to purchase the property. Again, the plaintiff confuses the legal principles applicable to an option to purchase with those

present case both with respect to its facts and the legal grounds on which the court based its order of specific performance.

[7] The plaintiff appears to argue that the defendant, by failing to fulfill its obligations under other provisions of the lease, repudiated the option contract, thereby excusing the obligation to tender payment. Notwithstanding the absence of a factual finding by the trial court that the defendant repudiated the option contract, this argument conflates breach of the lease agreement with repudiation of the option. Nevertheless, we cannot conclude based on the record before us that the defendant made a statement indicating that it would not perform under the option, such that the plaintiff's tendering of payment would be excused. See *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.*, supra, 149 Conn. 156 ("[t]he formal production of the amount to be tendered is excused . . . by an unequivocal declaration that it will not be received").

applicable to a contract for sale. Although "[i]t is well settled that a buyer seeking specific performance has the burden of proving that he or she is ready, willing and able to purchase the premises"; (internal quotation marks omitted) *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, 125 Conn. App. 678, 697, 10 A.3d 61 (2010), cert. denied, 300 Conn. 914, 13 A.3d 1100 (2011); this standard applies to requests for specific performance of contracts for the sale of land, not specific performance of options. Options, which impose obligations only on the optionor, require optionees to exercise them in strict compliance with their terms. See *Bayer* v. *Showmotion, Inc.*, supra, 292 Conn. 409 ("[t]o be effective, an acceptance of an offer under an option contract must be unequivocal, unconditional, and in exact accord with the terms of the option" [internal quotation marks omitted]). Given the unilateral nature of an option, which imposes a burden only on optionors, we decline to apply to options the standard for the granting of specific performance for bilateral contracts for the sale of land. In light of our determination that the court did not improperly find that the plaintiff did not effectively exercise the option, nor was the plaintiff excused from doing so, we cannot conclude that the court abused its discretion in declining to award specific performance of the option.

B

Roof Repairs

The plaintiff next claims that the court erred in declining to order specific performance of the defendant's obligation under the lease to repair the roof of the property. In particular, the plaintiff contends that the court improperly applied the doctrine of impossibility to excuse the defendant's performance of its obligations. We agree.

In its answer, the defendant pleaded four special defenses arising from statutes of limitations and the special defense of laches. It did not raise any defenses to the enforcement of the lease agreement, such as impossibility or impracticability. The defendant's post-trial brief, rather than presenting argument on the excuse of impossibility, argued that the defendant had fulfilled its obligations under the lease with regard to the roof repair. The court, in its memorandum of decision, found that, although the defendant's attempts to eliminate the leaking had been unsuccessful, it was excused from its performance of the obligation to "repair the entire roof . . . such that the leak will be completely fixed" because it was impossible to eliminate the leaking by repairing the roof, given that the leak was caused by shifting at the juncture between the old structure and the addition. The plaintiff argues on appeal that the court's sua sponte application of the defense of impossibility to defeat its breach of contract claim was improper.

"The interpretation of the requirements of the rules of practice presents a question of law, over which our review is plenary." *Cue Associates, LLC* v. *Cast Iron Associates, LLC*, 111 Conn. App. 107, 111, 958 A.2d 772 (2008). "Practice Book § 10-50 provides that "[f]acts which are consistent with [the claimant's allegations] but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged." (Internal quotation marks omitted.) *Martino* v. *Scalzo*, 113 Conn. App. 240, 245, 966 A.2d 339, cert. denied, 293 Conn. 904, 976 A.2d 705 (2009). The defense of impossibility does not aim to establish the absence of a breach of the contract; rather it assumes breach and instead seeks to show that a party is excused from performance because "at the time [the] contract [was] made, [his] performance under it is impracticable without his fault because of a fact of which he has no reason to know

. . . ." 2 Restatement (Second), Contracts, Existing Impracticability or Frustration § 266, p. 338 (1981). Accordingly, such defense must be specially pleaded.

"The fundamental purpose of a special defense, like other pleadings, is to apprise . . . opposing counsel of the issues to be tried, so that basic issues are not concealed until the trial is underway." (Internal quotation marks omitted.) *Martino* v. *Scalzo*, supra, 113 Conn. App. 245. It follows, therefore, that it is improper for a court, sua sponte, to apply an unpleaded special defense to defeat a plaintiff's cause of action. See *Cue Associates, LLC* v. *Cast Iron Associates, LLC*, supra, 111 Conn. App. 117 (trial court improperly applied special defense of statute of limitations to plaintiff's claim for trespass); see also *Oakland Heights Mobile Park, Inc.* v. *Simon*, 36 Conn. App. 432, 436–37, 651 A.2d 281 (1994) ("[i]t would be fundamentally unfair to allow any defendant to await the time of trial to introduce an unpleaded defense . . . [and] would result in 'trial by ambuscade' to the detriment of the opposing party").

In light of the fact that the defendant did not plead, raise at trial, or argue posttrial the defense of impossibility, and that the plaintiff was afforded no opportunity to present evidence disputing such defense or to argue against its applicability, the court improperly applied the defense in order to defeat the plaintiff's claim of breach and to deny specific performance.[8] We conclude

[8] The defendant argues in its brief to this court that because the plaintiff did not object to the "great amount of evidence [that] was submitted [at trial] that it was impossible to stop the leak by . . . repairing the roof," the court "had discretion to consider the defense." The defendant also asserts that the defense of impossibility was "argued and briefed posttrial." Both of these contentions lack merit. Although evidence related to the cause of the leak was adduced at trial, evidence that could support an inference that the leak could not be eliminated by repairing the roof, neither party offered evidence or testimony to prove the elements of a defense of impossibility. Furthermore, we could discern no argument or citation to legal authority in the defendant's posttrial brief on the defense of impossibility. As a result, we cannot say that the plaintiff was on notice of that defense.

that the court, by improperly relying on the unpleaded defense of impossibility to deny the remedy of specific performance, abused its discretion and, therefore, reverse the judgment of the court with respect to this count.

## II

## DAMAGES IN LIEU OF SPECIFIC PERFORMANCE

The plaintiff next argues that the court erroneously failed to award it damages for the defendant's breach of the contract provision requiring environmental remediation of the property. Specifically, it argues that the court, after denying specific performance of the remediation, should have ordered money damages to compensate the plaintiff for the defendant's breach. Because the plaintiff abandoned at trial its request for damages, we decline to review the merits of this claim.

Following trial, the parties submitted briefs to the court. The plaintiff's brief did not contain a request for money damages, but rather for an "order [that] the defendant specifically perform the [l]ease by conveying to the plaintiff the [p]remises for the purchase price of $42,051.33." After receiving the parties' posttrial briefs, the court heard oral argument on the content of the briefs. During that argument, the court and counsel for the plaintiff engaged in the following colloquy regarding the relief requested by the plaintiff:

"The Court: Now, so your specific demand is for specific performance, right?

"[The Plaintiff's Counsel]: Specific performance of the lease, nothing more, nothing less.

"The Court: Well, you also want adjustments on the purchase price?

"[The Plaintiff's Counsel]: That's correct.

"The Court: So you're not making a separate claim for damages?

"[The Plaintiff's Counsel]: No. . . ."

At the close of argument, the court invited the parties to submit supplemental briefs. The plaintiff submitted a supplemental brief in which it reiterated its request for specific performance, but made no request for damages.

In its memorandum of decision, the court noted that the plaintiff did not make a request for damages either in its two posttrial briefs or during posttrial argument. It, accordingly, did not address the issue of damages because "despite the broad damage claims in the complaint and amended complaint, the only claim for relief is an order of specific performance."

"As we have repeatedly reiterated, issues not properly raised before the trial court will ordinarily not be considered on appeal. . . . We have referred to the policy reasons underlying the preservation requirement on several occasions. The policy serves, in general, to eliminate the possibility that: (1) claims of error would be predicated on matters never called to the attention of the trial court and upon which it necessarily could have made no ruling in the true sense of the word; and (2) the appellee . . . would be lured into a course of conduct at the trial which it might have altered if it had any inkling that the [appellant] would . . . claim that such a course of conduct involved rulings which were erroneous and prejudicial to him. . . ." (Citations omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 48, 717 A.2d 77 (1998).

"[B]ecause our review is limited to matters in the record, we will not address issues not decided by the trial court." Id., 52. "[T]o permit a party to raise a claim on appeal that has not been raised at trial—after it is

too late for the trial court . . . to address the claim—
would encourage trial by ambuscade, which is unfair
to both the trial court and the opposing party." (Internal
quotation marks omitted.) *Nweeia* v. *Nweeia*, 142 Conn.
App. 613, 618, 64 A.3d 1251 (2013).

Not only did the plaintiff fail to raise the issue of
damages in lieu of specific performance before the trial
court, it affirmatively abandoned the issue. As a result,
the trial court and the defendant, relying on the plain-
tiff's abandonment, did not have the opportunity to
address this claim. We, therefore, decline to review
its merits.

## III

### RENTAL AND USE AND OCCUPANCY PAYMENTS

The plaintiff's final claim is that the court erred in
awarding rental and use and occupancy payments for
the months during which it paid partial rent to the
defendant. We disagree.

After the termination of the lease in April, 2010, the
plaintiff began making partial rent payments to the
defendant, in a lesser amount than the last agreed upon
rent of $6000 per month. The defendant, however, did
not accept these payments and never cashed the plain-
tiff's checks.[9] After the plaintiff initiated this action, the
defendant filed a counterclaim for rental and use and
occupancy payments in the amount of $24,000, which
represents four months rent at the last agreed upon
rate. The plaintiff generally denied the defendant's
counterclaim.

In its posttrial brief, the defendant argued that it was
entitled to rental and use and occupancy payments,

[9] At trial, the court accepted into evidence the plaintiff's checks for partial
rent payments to the defendant.

citing to both statutory and common-law authority. During posttrial argument, the plaintiff argued that the defendant was not entitled to rental and use and occupancy payments because the plaintiff paid to the defendant the amount the plaintiff would have been paying for a mortgage "under the terms of the option." It also argued that because the plaintiff "became the equitable owner of the [property]" when it "tried to exercise [the] option," the defendant was not entitled to rental and use and occupancy payments. The plaintiff's posttrial brief did not address the defendant's counterclaims, nor did its supplemental brief.

The court, "[f]or the reasons stated in [the defendant's] posttrial brief . . . [awarded] the rental and use and occupancy demands that [the defendant claimed]." It noted that "[n]o defenses [had] been explicitly raised to [that] demand." The plaintiff claims that the court's finding that the plaintiff raised no defenses to the defendant's demand was clearly erroneous, and because its award was based on this clearly erroneous finding, the court abused its discretion.

On appellate review, the court's award of rental use and occupancy payments is treated as an award of damages. *LeBlanc* v. *Tri-Town Shelter Services*, Inc., 110 Conn. App. 118, 121–22, 955 A.2d 55 (2008). "[T]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Internal quotation marks omitted.) *Votto* v. *American Car Rental, Inc.*, 273 Conn. 478, 483, 871 A.2d 981 (2005). "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling . . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.)

*Selene Finance, L.P.* v. *Tornatore,* 137 Conn. App. 130, 134, 46 A.3d 1070, cert. denied, 307 Conn. 908, 53 A.3d 223 (2012). "With regard to the trial court's factual findings, [however] the clearly erroneous standard of review is appropriate. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Miller* v. *Guimaraes,* 78 Conn. App. 760, 766–67, 829 A.2d 422 (2003).

We agree with the plaintiff's contention that the court's finding that the plaintiff offered no defense to the defendant's counterclaim for rental and use and occupancy payments is contradicted by both the pleadings and the content of plaintiff's posttrial argument, and is, therefore clearly erroneous. We do not agree, however, that this constitutes a per se abuse of discretion by the court in fashioning its award to the defendant. The court explained that the basis for its award is the arguments set forth in the defendant's posttrial brief. Because the plaintiff offers no argument as to how, based on the arguments presented in the defendant's posttrial brief, the trial court could not reasonably have reached the decision to grant the defendant's request, we cannot conclude that the court abused its discretion.[10]

The judgment is reversed with respect to the plaintiff's claim of breach of contract for failure to repair the

---

[10] The plaintiff argues that the trial court's reliance on the "reasons stated in [the defendant's] posttrial brief" in reaching its decision to award the defendant rental and use and occupancy payments was improper. It cites as authority for this proposition *Cameron* v. *Avonridge, Inc.,* 3 Conn. App. 230, 486 A.2d 661 (1985). This court in *Cameron,* however, determined that "although [this court does] not approve of [the] practice [of adopting the language of a party's brief as its memorandum of decision] . . . it [does not result] in less than a fair trial. Nor [is it a] manifest abuse of discretion or injustice." Id., 235. We do not conclude otherwise in the present case.

roof and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.