******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HOWARD-ARNOLD, INC. *v.* T.N.T. REALTY, INC.
(SC 19227)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued December 3, 2014—officially released March 3, 2015*

*Rowena A. Moffett*, for the appellant (plaintiff).

*Michael C. Jankovsky*, for the appellee (defendant).

*Opinion*

ESPINOSA, J. This appeal arises from a dispute between the parties over an option to purchase certain real property contained in a lease agreement. The plaintiff, Howard-Arnold, Inc., appealed to the Appellate Court from the judgment of the trial court[1] denying its request to order specific performance of the option to purchase provision in the lease.[2] *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, 145 Conn. App. 696, 77 A.3d 165 (2013). We subsequently granted the plaintiff's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that the plaintiff did not correctly exercise the option to purchase real estate when, at the time of such exercise, the defendant had not performed its obligations to the plaintiff with respect to the environmental remediation of the real estate?" *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, 310 Conn. 940, 941, 79 A.3d 892 (2013). The defendant contends that the Appellate Court properly concluded that the plaintiff had failed to exercise the option to purchase because it did not tender the purchase price as required by the lease. The plaintiff counters that it was not required to tender the purchase price in order to exercise the option to purchase, and that it was excused from tendering the purchase price. We conclude that the plaintiff did not properly exercise the option to purchase the property under the terms of the lease and, therefore, we affirm the judgment of the Appellate Court.

The record reveals the following factual background and procedural history.[3] The plaintiff, a restaurant supply company, leased certain commercial property in West Haven (premises) from the defendant, T.N.T. Realty, Inc., for a term of ten years, ending in April, 2010. *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, supra, 145 Conn. App. 699. The premises consists of approximately 18,402 square feet of building space and approximately 1.1 acres of land, and contains a wholesale restaurant supply business, offices, a showroom, a warehouse, and a retail store. The lease provided the plaintiff and Thomas Capobianco (guarantor) with the option to purchase the premises. Id. Article thirty-six of the lease provides in relevant part: "During the term of the [l]ease of the [p]remises, [the plaintiff] and/or [g]uarantor shall each have the right to purchase the [p]remises . . . upon the payment of [$223,500] plus the then unpaid balance of the [m]ortgage which [the defendant] may then have on the [p]remises, provided that such balance shall not exceed [$350,000] . . . . Notwithstanding the foregoing, effective on April 14, 2010, [the plaintiff] and/or [g]uarantor shall each be permitted to purchase the [premises] upon the payment of the sum of [$223,500] to [the defendant]."

In a separate provision, the lease also required the defendant to perform environmental remediation on

the premises. Article nine of the lease provides in relevant part: "On or before April 30, 2001, [the defendant] shall perform environmental remediation, as necessary, attributable to oil and gas leakage existing as of the [c]ommencement [d]ate of this [l]ease, including the removal of the existing underground oil storage tank, and including restoration of the [p]remises disturbed in connection with such environmental remediation as required by law and to substantially the same condition as existed prior to the commencement of such work." Although the defendant performed some environmental remediation on the premises prior to the lease deadline, the trial court found that the defendant had not proved that it met its obligation pursuant to article nine of the lease.

In 2001, the plaintiff applied to a bank for financing in order to purchase the premises. *Howard-Arnold, Inc. v. T.N.T. Realty, Inc.*, supra, 145 Conn. App. 702. The bank performed an environmental review of the premises and concluded that the plaintiff would have to conduct further environmental investigation, including testing of soil samples, before the bank would provide financing. Id. Also in 2001, the parties began extensively corresponding regarding the plaintiff's potential purchase of the property. Id., 705. For several years they exchanged proposals, including discussions of a modified purchase price but never reached an agreement on the terms of the sale. Id. On June 7, 2007, the plaintiff's attorney sent a letter to the defendant's attorney stating that the plaintiff " '[had] elected to exercise [the] option to purchase the premises,' " requesting a written copy of the outstanding mortgage balance, and explaining that, before the parties could close on the transaction, the defendant had to fulfill its obligation under article nine of the lease, including its obligation to complete the environmental remediation. Id. The parties' correspondence continued throughout June and July, 2007, with the defendant providing the plaintiff with the mortgage information, but advising the plaintiff that it had complied with its obligations under the lease. Id. It is undisputed that the plaintiff never secured financing to purchase the premises, nor did it ever attempt to tender payment of the purchase price. Id.

The trial court found that, in order to exercise the option to purchase the premises, the plaintiff had to pay the purchase price either directly to the defendant or by placing the money into an escrow account. Id., 706. Because the plaintiff had not tendered the payment as the lease required, the court declined to order specific performance. Id. The court also found that the plaintiff was not excused from tendering the purchase price, despite the defendant's refusal to perform additional environmental remediation. Id. Additionally, the court found that the plaintiff's letters to the defendant providing notice of its exercise of the option to purchase were proposals to alter the terms of the lease. Id.

On appeal, the Appellate Court concluded that the language of the option to purchase was clear and unambiguous and, "[g]iven the plain language of the option and the unchallenged factual finding that the plaintiff did not tender payment, the court did not err in finding that the plaintiff failed to exercise the option in accordance with its terms."[4] Id., 708. This certified appeal followed.

In considering the certified question, we note that the standard of review for a lease, which is a contract, is plenary. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 409, 973 A.2d 1229 (2009). The standard for determining whether a party has exercised an option to purchase is well settled. "[A]n option to purchase, like the one at issue in the present case, operates as a continuing offer to sell, irrevocable until the expiration of the time period fixed by agreement of the parties, which creates in the option holder the power to form a binding contract by accepting the offer." (Internal quotation marks omitted.) *Pack 2000, Inc.* v. *Cushman*, 311 Conn. 662, 675, 89 A.3d 869 (2014). "When a tenant exercises an option to purchase the leased premises, a new bilateral contract is created." *Bayer* v. *Showmotion, Inc.*, supra, 414. "With respect to the actual exercise of the option, [t]o be effective, an acceptance of an offer under an option contract must be unequivocal, unconditional, and *in exact accord with the terms of the option*. . . . If an option contract provides for payment of all or a portion of the purchase price in order to exercise the option, the optionee . . . must not only accept the offer but pay or tender the agreed amount within the prescribed time." (Emphasis added; internal quotation marks omitted.) *Pack 2000, Inc.* v. *Cushman*, supra, 676. "In such cases, a mere acceptance of the offer, even though unequivocal, is insufficient to exercise the option." *Smith* v. *Hevro Realty Corp.*, 199 Conn. 330, 339, 507 A.2d 980 (1986). "A tender is an offer to pay a debt or discharge a duty, and . . . the offer to pay involves, as a general rule, the actual production of the money and the placing of it in the power of the person entitled to receive it." (Internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, 294 Conn. 611, 626, 987 A.2d 1009 (2010).

The plaintiff contends that it was not required to tender payment because article thirty-six of the lease is silent as to when the payment is to be made. Specifically, the plaintiff argues that because the full purchase price cannot be determined until additional information concerning the unpaid balance of the mortgage on the

premises is provided by the defendant, a plain reading of the contract leads to the conclusion that the plaintiff was not required to tender payment in order to exercise the option. We are not persuaded.

We begin our analysis with the language of the relevant lease provisions. The language of article thirty-six, providing that the plaintiff "shall . . . have the right to purchase the [p]remises . . . upon the payment of [$223,500] plus the then unpaid balance of the [m]ortgage," is clear and unambiguous. As the provision states, the plaintiff can only exercise the option to purchase *upon the payment of* the purchase price. Because it is undisputed that the plaintiff did not tender the purchase price as required, we conclude that the plaintiff failed to exercise the option to purchase during the ten years of the lease when the option was available. The lease does specify when the payment was to be tendered; it was to be tendered on any date during the ten year lease term on which the plaintiff wished to exercise the option to purchase. Because the plaintiff did not properly exercise the option to purchase, no bilateral contract for sale was formed.

Notwithstanding the express contract language in the lease requiring the plaintiff to tender the purchase price in order to exercise the option to purchase, the plaintiff also argues that it was excused from doing so because the defendant had not fulfilled its obligations under article nine of the lease to complete the environmental remediation. We disagree. The option to purchase in article thirty-six of the lease agreement made no reference to the environmental remediation requirement in article nine, and the plaintiff's obligation to tender payment in order to exercise the option was not contingent on the defendant performing the remediation. In fact, the lease allowed the plaintiff to exercise the option and take title to the premises before the environmental remediation had to be completed. Specifically, the plaintiff had the ability to exercise the option on day one of the lease—April 14, 2000. The environmental remediation was not required to be completed, however, until April 30, 2001. If the plaintiff had chosen to exercise the option in the first year of the lease—which the plaintiff very well could have done under its terms— the environmental remediation may not have been completed and there could be no expectation by the plaintiff that it would have been, given the terms of the contract. Finally, as we already have stated in this opinion, the well established rule is that an exercise of an option to purchase must be unequivocal, unconditional, and in exact accord with the terms of the option. See, e.g., *Pack 2000, Inc.* v. *Cushman*, supra, 311 Conn. 676.

The plaintiff also argues that the defendant's purported failure to perform the required environmental remediation frustrated the plaintiff's ability to exercise the option.[5] "The doctrine of frustration of purpose

. . . excuses a promisor in certain situations where the objectives of the contract have been utterly defeated by circumstances arising after the formation of the agreement. . . . Excuse is allowed under this rule even though there is no impediment to actual performance." (Citations omitted.) *Hess* v. *Dumouchel Paper Co.*, 154 Conn. 343, 350–51, 225 A.2d 797 (1966). "A party claiming that a supervening event or contingency has frustrated, and thus excused, a promised performance must demonstrate that: (1) the event substantially frustrated his principal purpose; (2) the nonoccurrence of the supervening event was a basic assumption on which the contract was made; (3) the frustration resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation than the law imposes." *O'Hara* v. *State*, 218 Conn. 628, 638 n.7, 590 A.2d 948 (1991). Under the facts of the present case, this doctrine does not apply because the purpose of the lease was to lease the premises to the plaintiff and the lack of environmental remediation did not interfere with that purpose. In fact, the plaintiff leased the premises for the entire ten years that the contract had anticipated and continues to occupy the premises today. Article thirty-six of the lease, which included the option to purchase, merely operated as an offer by the defendant to sell the property to the plaintiff. See *Pack 2000, Inc.* v. *Cushman*, supra, 311 Conn. 675.[6]

We conclude that the plaintiff did not exercise the option to purchase the premises and, accordingly, the Appellate Court properly concluded that the trial court did not abuse its discretion in denying specific performance.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The plaintiff's amended complaint sought in its prayer for relief: (1) specific performance for necessary roof repairs; (2) specific performance for all required environmental remediation; (3) specific performance for the sale of the property pursuant to the option to purchase; (4) monetary damages; (5) attorney's fees and costs; and (6) other relief the court deemed just and reasonable in equity. In its two posttrial briefs and its posttrial oral arguments, however, the only relief the plaintiff requested was an order of specific performance. The defendant counterclaimed, seeking: (1) rental and use and occupancy payments from the plaintiff; (2) damages for the plaintiff's failure to make repairs as specified under article nine of the lease agreement; and (3) attorney's fees. The trial court found for the plaintiff on its claim that the defendant breached the lease for its failure to properly perform the environmental remediation, and found for the defendant on its claim that the plaintiff owed the defendant rental and use and occupancy payments. The court declined to order specific performance or to award monetary damages or attorney's fees.

[2] The plaintiff had also claimed in the Appellate Court "that the [trial] court erred in (1) declining to order specific performance of . . . the defendant's obligation under the lease to perform roof repairs; (2) declining to award damages to the plaintiff in lieu of specific performance after finding that the defendant was in breach of the lease agreement; and (3) awarding to the defendant rental and use and occupancy payments." *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, 145 Conn. App. 696, 698, 77 A.3d 165 (2013). The Appellate Court reversed the trial court's denial of specific performance of the roof repair obligations, concluding that the court abused its discretion by "improperly relying on the unpleaded defense of impossibility to deny the remedy of specific performance." Id., 712–13. The Appellate Court

declined to review the merits of the claim for damages in lieu of specific performance because the plaintiff abandoned its request for damages before the trial court, which prevented the defendant and the trial court from addressing the claim. Id., 713–15. Lastly, the Appellate Court affirmed the award of the rental and use and occupancy payments. Id., 715. None of these claims is at issue in this appeal.

[3] For a more detailed summary of the factual background, see *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, supra, 145 Conn. App. 699–703, 705–706.

[4] In the Appellate Court, the plaintiff also argued "that the court improperly declined to order specific performance because it was 'ready, willing and able' to purchase the property." *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, supra, 145 Conn. App. 709. The Appellate Court rejected that argument, stating that, "the plaintiff confuses the legal principles applicable to an option to purchase with those applicable to a contract for sale. Although [i]t is well settled that a buyer seeking specific performance has the burden of proving that he or she is ready, willing and able to purchase the premises . . . this standard applies to requests for specific performance of contracts for the sale of land, not specific performance of options. Options, which impose obligations only on the optionor, require optionees to exercise them in strict compliance with their terms." (Citation omitted; internal quotation marks omitted.) Id., 709–10. Before this court, the issue of whether the plaintiff is ready, willing, and able to purchase the premises only becomes relevant if we conclude that the plaintiff correctly exercised the option to purchase or was excused from tendering the purchase price. Because we conclude that the plaintiff did not properly exercise the option and that the plaintiff was required to tender the money, we need not address this claim.

[5] We consider this claim because, although the plaintiff did not label this argument as "frustration of purpose," the substance of the argument was presented to both the trial court and the Appellate Court.

[6] The plaintiff also argues that "[t]he trial court . . . erred in its conclusion that [the plaintiff's] various notices of the exercise of its option were ineffective because they did not unequivocally offer to pay the purchase price set forth in the [l]ease, but rather demanded [the defendant's] compliance with its obligations under the [l]ease prior to closing and/or contained payment terms taking into account [the defendant's] failure to do so." As we concluded earlier in this opinion, the plaintiff never properly exercised the option to purchase because it never tendered the purchase price. Any demands or requests included in letters sent to the defendant do not alter this fact. Additionally, the plaintiff briefs the issue of whether it is entitled to offset rental, use, and occupancy payments it made to the defendant and to adjust the purchase price because the defendant had not met its obligations under article nine. This argument is only relevant if we decide this case in the plaintiff's favor. Because we conclude that the plaintiff did not properly exercise the option to purchase and, therefore, no bilateral contract for sale ever was created, we need not address this argument.

It is unclear whether the plaintiff also argues that it was excused from tendering payment because the defendant repudiated the option to purchase. To the extent that the plaintiff makes this argument, we agree with the Appellate Court. "Notwithstanding the absence of a factual finding by the trial court that the defendant repudiated the option contract, this argument conflates breach of the lease agreement with repudiation of the option. Nevertheless, we cannot conclude based on the record before us that the defendant made a statement indicating that it would not perform under the option, such that the plaintiff's tendering of payment would be excused." *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, supra, 145 Conn. App. 709 n.7.