******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SHERI SPEER *v.* DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE
## (AC 47748)

Elgo, Clark and Westbrook, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment, following its granting of the defendant's motion for judgment and costs and the denial of her motions for leave to amend the operative complaint and to substitute a new party defendant. The plaintiff claimed, inter alia, that the court improperly awarded attorney's fees to the defendant under a provision of the statute (§ 47-31 (e)) governing actions seeking to quiet title to certain real property when that statute only provides for a taxation of "costs." *Held*:

The trial court improperly awarded attorney's fees to the defendant pursuant to § 47-31 (e), as that statute does not expressly authorize a court to award attorney's fees to a disclaiming defendant, and, to the extent that § 47-31 (e) reflects the legislature's intent to create a statutory exception to the American rule, that exception is expressly limited to the reimbursement of statutory costs and does not authorize a court to award a defendant reasonable attorney's fees.

The trial court did not abuse its discretion by denying the plaintiff's request for leave to amend the operative complaint, filed after the defendant had sought judgment on the quiet title count, the only remaining count in the operative revised complaint, as it was well within the court's discretion to deny the plaintiff's request as untimely given the late stage in the proceedings, and the obvious purpose of the amendment was to resurrect a claim that the plaintiff had previously abandoned after repleading following the granting of a motion to strike.

The trial court properly denied the plaintiff's request to substitute a new party defendant solely for the purpose of pursuing a claim that she had abandoned, as judgment had already entered on the quiet title count and no counts remained to be adjudicated in the action.

Argued November 20, 2025—officially released June 2, 2026

*Procedural History*

Action, inter alia, seeking to quiet title to certain real property, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Goodrow, J.*, granted the defendant's motion to strike in part the complaint; thereafter, the plaintiff filed a revised complaint; subsequently, the court, *Goodrow, J.*, granted the defendant's motion for judgment and

costs on the revised complaint; thereafter, the court, *Goodrow, J.*, denied the plaintiff's request for leave to amend her complaint; subsequently, the court, *Graff, J.*, granted the defendant's motion for judgment on the stricken count and awarded attorney's fees to the defendant; thereafter, the plaintiff appealed to this court; subsequently, the court, *Graff, J.*, denied the plaintiff's motion to substitute the party defendant. *Reversed in part*; *judgment directed*; *award vacated*.

*Sheri Speer*, self-represented, the appellant (plaintiff).

*Pierre-Yves Kolakowski*, for the appellee (defendant).

*Opinion*

WESTBROOK, J. In this quiet title action, the plaintiff, Sheri Speer, appeals from the trial court's granting of a motion for judgment and costs filed pursuant to General Statutes § 47-31 (e)[1] by the defendant, Deutsche Bank National Trust Company, as Trustee For Long Beach Mortgage Loan Trust 2005-1, and from the court's denial of her motions to amend the operative complaint and to substitute a new party defendant. The plaintiff argues that the court (1) improperly awarded attorney's fees to the defendant under § 47-31 (e) because the statute only provides for a taxation of "costs," not an award of attorney's fees; (2) abused its discretion by denying her request to amend the operative complaint; and (3) improperly denied her request to substitute as the party defendant, Select Portfolio Servicing, Inc. (Select), which

---

[1] General Statutes § 47-31, our quiet title statute, provides in relevant part: "(d) Each defendant shall, in his answer, state whether or not he claims any estate or interest in, or encumbrance on, the property, or any part of it, and, if so, the nature and extent of the estate, interest or encumbrance which he claims, and he shall set out the manner in which the estate, interest or encumbrance is claimed to be derived.

"(e) No judgment for costs shall be rendered in [a quiet title] action against any defendant, who, by his answer, disclaims all estate or interest in or encumbrance on such property, but costs shall be taxed in his favor at the discretion of the court; and the court shall, in any such case, without further proof, render judgment that such defendant has no estate, interest in or encumbrance on such property or any part of it. . . ."

the plaintiff argued was the party "actively engaged in the wrongs complained of" in her complaint. We agree with the plaintiff's first claim and reverse the judgment only as to the award of attorney's fees and otherwise affirm the judgment of the court.

The record reveals the following relevant facts and procedural history. In October 2021, the plaintiff commenced the underlying action against the defendant, which had been the assignee of a mortgage and the holder of the related promissory note with respect to property the plaintiff owns at 12 Lee Avenue in New London. The original complaint contained three counts. Count one sought to quiet title to the Lee Avenue property in accordance with § 47-31. Count two alleged that the defendant had violated the federal Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692f (2006). Count three alleged that the defendant had violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. In support of these counts, the plaintiff alleged that, prior to June 2021, the defendant had "issued [her] a [Form] 1099 for income based on its purported forgiveness of all debt and principal it asserted had been due under the [promissory note]. It subsequently sought a tax credit or deduction based on this imputed income for abandoning all sums due under the note with the Internal Revenue Service, yet it did not actually release the mortgage and issue a final accounting of the loan being serviced." The plaintiff also alleged that the defendant, "having abandoned all responsibility to service the loan, also ceased making tax payments from escrow, which triggered tax demands from a state marshal to foreclose on property taxes due to the city of New London. Because the defendant had not released the mortgage, it would be filing a false claim [to] allow the marshal to erroneously send it money as an encumbrancer of record." Finally, the plaintiff alleged that, "[i]n essence, the defendant has given the plaintiff all of the tax liabilities for forgiveness of the loan in full without any of the benefits, such as and including . . .

free and clear title and the right to all the proceeds of any tax auction."

On August 15, 2022, the defendant filed a motion to strike count two of the original complaint, arguing that the plaintiff had not and could not state a cognizable claim under the FDCPA because, inter alia, the defendant is not a debt collector as defined by statute. The plaintiff filed a memorandum in opposition to the motion to strike, arguing that count two was legally sufficient and established all elements of an FDCPA claim. After a hearing, the court, *Goodrow, J.*, granted the motion to strike count two, agreeing with the defendant that the defendant was not a debt collector and concluding that none of the alleged conduct by the defendant had occurred during the collection of a debt.

On November 7, 2022, the plaintiff filed a revised complaint, which contained only a single count sounding in quiet title. The plaintiff did not replead the stricken second count of the original complaint nor did she include the CUTPA count that she had alleged as count three of the original complaint, which count was not the subject of the motion to strike.

On November 21, 2022, the defendant filed an answer to the operative revised complaint that included a statement pursuant to § 47-31 (d) disclaiming any estate or interest in the Lee Avenue property. The disclaimer statement provided that the defendant had executed and issued a release of the subject mortgage on June 26, 2019, which was recorded on the New London land records on July 8, 2019, and that, in light of the release, the defendant did not claim any estate or interest in, or any encumbrance on, the Lee Avenue property.[2]

Along with the answer and disclaimer, the defendant filed a motion for judgment and costs pursuant to § 47-31 (e), in which it asked the court to render a judgment that

[2]The defendant appended to its answer a copy of the release, which included a stamp of the city clerk for New London indicating the release was received and recorded on the city's land records on July 8, 2019.

the defendant has no estate or other interest in the property that is the subject of the plaintiff's quiet title action and to award the defendant "the costs of defending the plaintiff's quiet title claim." The defendant indicated in its motion that it intended to submit a bill of costs and an affidavit of attorney's fee at a later date. It argued that it was entitled to reimbursement of the expenses it incurred in defending against the plaintiff's quiet title claim because, as provided in its disclaimer statement, it had recorded the release of the plaintiff's mortgage more than two years prior to the plaintiff commencing her quiet title action, and, thus, she had constructive knowledge that the defendant no longer held any interest in the subject property. Moreover, this was "a fact that [the plaintiff] should have discovered had she performed even the minimum amount of prefiling investigation required to bring her quiet title claim."

On November 28, 2022, the plaintiff filed an objection to the motion for judgment and a request for leave to amend her complaint, citing "newly discovered information relating to the servicing of the mortgage this action concerns . . . ." The defendant opposed the request to amend the complaint, arguing that the plaintiff was improperly attempting to avoid liability under § 47-31 (e) and to resurrect her CUTPA claim, which she had abandoned by not including that count in the operative revised complaint.

Following a hearing, on August 24, 2023, the court granted the motion for judgment without comment and overruled the plaintiff's objection. That same day, the court denied the plaintiff's request to amend her complaint "for the reasons articulated in the defendant's objection . . . ." The plaintiff filed a motion to reargue/reconsider the court's August 24, 2023 rulings, which the court denied without comment on September 21, 2023.

On October 27, 2023, the defendant moved for judgment on the previously stricken FDPCA count pursuant to Practice Book § 10-44. On November 15, 2023, it filed a motion for attorney's fees. In the motion for attorney's

fees, the defendant argued that the court had granted its motion for judgment under § 47-31 (e), in which it specifically had requested that the court award it "the costs of defending the plaintiff's quiet title claim" on the basis of a bill of costs and an affidavit of attorney's fees to be submitted at a later date. The defendant simultaneously filed an affidavit regarding attorney's fees totaling $8377.23. It did not submit a bill of costs. The plaintiff filed an objection to the motion for attorney's fees in which she argued that the invoices attached to the affidavit of attorney's fees identified Select, the entity that previously had serviced her mortgage loan, as the client, not the defendant, and that, even assuming the defendant paid any of the attorney's fees, § 47-31 (e) only provided for a discretionary payment of costs, not attorney's fees.[3]

On December 18, 2023, the plaintiff filed a "motion to cite in party" in which she moved for an order substituting Select for the defendant, claiming she had only recently learned that Select, not the defendant, was the party "actively engaged in the wrongs complained of" in the complaint. The court thereafter denied this motion.

The court, *Graff, J.*, granted the defendant's motion for judgment on the stricken FDPCA count without comment on April 30, 2024.[4] That same day, the court

[3]Our Supreme Court previously has explained, in general terms, the complex nature of mortgage-backed security trusts and the distinct roles played by the trustee of such a trust, like the defendant, and a company tasked with servicing the numerous mortgage loans involved. "Securitization starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. . . . The investment bank bundles together the multitude of mortgages it purchased into a special purpose vehicle, usually in the form of a trust, and sells the income rights to other investors. . . . A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors." (Citations omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 313 n.4, 71 A.3d 492 (2013).

[4]On July 17, 2024, the court issued an articulation regarding its April 30, 2024 ruling. After setting forth the relevant portions of Practice Book § 10-44, the court concluded: "More than fifteen days have passed

granted the defendant's motion for attorney's fees and overruled the plaintiff's objection thereto, stating: "The court has reviewed the motion and accompanying affidavit. The court grants the motion for attorney's fees in the amount of $8377.23." The plaintiff filed a motion on May 6, 2024, seeking reconsideration of the court's April 30, 2024 decisions. The court denied the motion for reconsideration on June 5, 2024, and the plaintiff timely filed the present appeal.[5]

I

The plaintiff first claims that the court improperly awarded attorney's fees to the defendant pursuant to § 47-31 (e) because that statute, by its express terms, only provides for a defendant's recovery of "costs," and, in the absence of other language to the contrary, the law generally does not recognize the recovery of attorney's fees as a component of a party's costs. The defendant argues that, because the relevant language of the quiet title statute has not changed since it was enacted in 1887, in construing the meaning of the term "costs," we must consider how that term was understood in 1887, and, if viewed in that light, it was a proper exercise of the court's equitable discretion to award the defendant reasonable attorney's fees as a measure of costs. We agree with the plaintiff that § 47-31 (e) does not expressly authorize a court to award attorney's fees to a disclaiming defendant

since the court granted the motion to strike count two on November 3, 2022. The plaintiff failed to comply with Practice Book § 10-44. Therefore, the motion for judgment is granted."

[5]After filing the appeal, the plaintiff filed a motion asking the trial court to articulate the factual and legal basis for denying her requests to amend her complaint and to substitute Select as the party defendant. The trial court denied the motion for articulation, notice of which issued on September 10, 2024. On October 1, 2024, the plaintiff filed a motion for review of that ruling with this court, which denied the motion as untimely. See Practice Book § 66-7 (motion for review of trial court decision on motion for articulation must be filed "within ten days of the issuance of notice by the appellate clerk of the decision from the trial court sought to be reviewed").

and, in light of the American rule, we decline to construe it in the manner advanced by the defendant.

"The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights. . . . This court also has recognized a bad faith exception to the American rule, which permits a court to award attorney's fees to the prevailing party on the basis of bad faith conduct of the other party or the other party's attorney." (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007); see also *Traystman, Coric & Keramidas, P.C.* v. *Daigle*, 282 Conn. 418, 429, 922 A.2d 1056 (2007) ("The law expects parties to bear their own litigation expenses, except where the legislature has dictated otherwise by way of statute. . . . Costs are the creature of statute . . . and unless the statute clearly provides for them courts cannot tax them." (Citation omitted; internal quotation marks omitted.)).

Whether the provision in § 47-31 (e) that provides that "*costs* shall be taxed . . . at the discretion of the court"; (emphasis added); in favor of a disclaiming quiet title defendant also authorizes the court to award a defendant reasonable attorney's fees is a question of statutory interpretation over which our review is plenary. *Pryor* v. *Brignole*, 231 Conn. App. 659, 670, 333 A.3d 1112 (2025). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute

itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 670–71. If a statute uses a word or phrase that is a legal term of art, i.e., one that has "acquired a peculiar and appropriate meaning in the law requiring it to be construed and understood accordingly," we will presume that the word or phrase "[has] been used in that sense." (Internal quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 689, 41 A.3d 1013 (2012); see also General Statutes § 1-1 (a).

The text of § 47-31 (e) provides that "*costs* shall be taxed . . . at the discretion of the court" in favor of a quiet title defendant who disclaims any interest in the subject property. (Emphasis added.) By a defendant disclaiming all interest in the property, the court effectively may quiet title in favor of the plaintiff. By authorizing the court to tax costs in favor of the defendant, something ordinarily only available to a prevailing party, the statute incentivizes defendants who do not claim an interest in property at issue in a quiet title action to establish this fact early in the litigation. Because the provision allows a party to recoup some litigation expenses from its opponent, it acts as a statutory exception to the common-law American rule. This court previously has explained that exceptions to the American rule, being in derogation of common law, "must be narrowly construed." *Thunelius* v. *Posacki*, 193 Conn. App. 666, 680, 220 A.3d 194 (2019), citing *Fennelly* v. *Norton*, 294 Conn. 484, 504, 985 A.2d 1026 (2010) ("[w]hen a statute is in derogation of common law . . . it should receive a strict construction

and is not to be extended, modified, repealed or *enlarged in its scope*" (emphasis added; internal quotation marks omitted)).

Section 47-31 (e) provides that the court may tax "costs" in favor of the disclaiming defendant. The term "costs" is not defined in the statute, but it has a well understood meaning that is clear and unambiguous. This court previously has explained that "[t]he term costs is a term of art having a limited, well-defined legal meaning as statutory allowances to a prevailing party in a judicial action in order to reimburse him or her for expenses incurred in prosecuting or defending the proceeding. . . . *Costs are not synonymous with expenses.* Because costs are limited to necessary expenses, they may not include everything that a party spends to achieve victory; rather, the term expenses refers to those expenditures made by a litigant in connection with an action that are normally not recoverable from the opponent but must be borne by the litigant absent a special statute or the exercise of judicial discretion." (Emphasis altered; internal quotation marks omitted.) *Paniccia* v. *Success Village Apartments, Inc.*, 235 Conn. App. 608, 622, 346 A.3d 517 (2025), cert. granted, 354 Conn. 902, 349 A.3d 20 (2026).[6]

"Various statutory provisions, including [General Statutes] § 52-257 (fees of parties in civil actions), General Statutes §§ 52-258 (jury fees), 52-259 (court fees), 52-260 (witness fees) and 52-261 (fees and expenses of officers and persons serving process or performing other duties), list specific enumerated costs that are recoverable

---

[6]In *Paniccia,* this court construed a provision in our wage collection statute that permits the recovery of "costs and such reasonable attorney's fees *as may be allowed by the court* . . . ." (Emphasis added.) General Statutes § 31-72. This court concluded that the legislature's use of the qualifying language "as may be allowed by the court" rendered the term "costs" ambiguous as to whether it authorized the court to award only statutory, taxable costs or whether the court could award any and all reasonable and necessary expenses. *Paniccia* v. *Success Village Apartments, Inc.*, supra, 235 Conn. App. 615. The same ambiguity does not exist here because § 47-31 (e) refers to costs without the same qualifying language at issue in *Paniccia*.

[pursuant to] a bill of costs." *Yeager* v. *Alvarez*, 134 Conn. App. 112, 120, 38 A.3d 1224 (2012). Although attorney's fees are, without doubt, an *expense* of litigation, they generally are not an element of *costs* as that term is commonly understood and described in our statutes. Unless "costs" are otherwise defined in a statute to include reasonable attorney's fees, a statute permitting only a taxation of costs does not authorize an award of attorney's fees. Construing § 47-31 (e) narrowly as we must and assigning the term "costs" its limited and well-defined legal meaning, we are persuaded that the "costs" the court may award under the statute are limited to ordinary statutory costs and similar items and cannot include an award of attorney's fees in contravention of the American rule.

The defendant's arguments to the contrary are unavailing. First, the defendant argues that the absence of express language in § 47-31 authorizing an award of attorney's fees "is of no moment" because the defendant's search of the 1887 revision of the General Statutes revealed that no statutes from that time period used the phrases attorneys fees, attorney's fees or attorneys' fees. The apparent thrust of this argument is that the absence of an express authorization to award attorney's fees in our quiet title statute is unremarkable because no contemporary statute used that term. Second, and relatedly, the defendant directs our attention to language in an unrelated will dispute statute found in the 1887 revision of the General Statutes that provides in relevant part that "there shall be allowed to each of the parties to such proceeding such reasonable sum for expenses and counsel fees as said court, in its discretion, shall deem proper; which allowance shall be taxed as costs in the cause . . . ." General Statutes (1887 Rev.) § 1124. The defendant argues that this language "provides ample evidence that the General Assembly's use of the word 'costs' when it enacted the quiet title statute

contemplated the inclusion of attorney's fees, awarded in the court's equitable discretion."

The defendant's suggested construction is unconvincing. We construe the statutory language relied on by the defendant as more convincingly demonstrating that, if the legislature had intended to include an award of attorney's fees as a component of taxable costs in § 47-31 (e), it would have used express language to reflect that intent. If, as the defendant argues, attorney's fees were commonly understood to be a component of costs in 1887, there would have been no need for the legislature to have written the statute relied on by the defendant in the manner that it did. It would have sufficed simply to authorize the court to tax costs. See *Kuchta* v. *Arisian*, 329 Conn. 530, 540, 187 A.3d 408 (2018) ("[i]t is a cardinal rule of construction that no word or phrase of a statute should be rendered superfluous"). The defendant's example also largely rebuts its first argument, because it demonstrates that the mere absence of the term attorney's fees can reasonably be attributed to the legislature's use of analogous terms, such as "counsel fees."

Finally, the defendant argues that our Supreme Court's decision in *Fengler* v. *Northwest Connecticut Homes, Inc.*, 215 Conn. 286, 575 A.2d 286 (1990), demonstrates that if a court is authorized to award costs at its discretion, such an award properly may also include an award of attorney's fees. We are not persuaded that the court's analysis in *Fengler* undermines our conclusion that the legislature's decision to limit a defendant's recovery to costs means that a court, in rendering a judgment in accordance with § 47-31, is not authorized to also award attorney's fees.

The court in *Fengler* was tasked with construing language found in what is now Practice Book § 10-60 (c) and General Statutes § 52-130 regarding amendments of pleading. Id., 289. Practice Book § 10-60 (c) provides in relevant part: "If the amendment occasions delay in the trial or inconvenience to the other party, the judicial authority may award costs in its discretion in favor of the

other party." Section 52-130 provides in relevant part: "[I]n any case when a party amends or alters any part of the pleadings or pleads anew, if it occasions any delay in the trial or inconvenience to the other party, he shall be liable to pay costs at the discretion of the court. . . ."

Because the court in *Fengler* was construing a different statute in an unrelated legal context, its holding is not binding with respect to our construction of § 47-31 (e). Moreover, nothing in its analysis suggests that the court intended its analysis or rationale to extend beyond the facts and circumstances before it. The court did not mention or provide any analysis of the American rule on which we rely in support of our decision in the present case. Finally, in *Fengler,* to justify an award of attorney's fees the statute required the court to find that the amendment at issue had delayed trial or inconvenienced the other party, which is consistent with the "bad faith" exception to the American rule. See *Fengler* v. *Northwest Connecticut Homes, Inc.*, supra, 215 Conn. 289. In the present case, the court granted the defendant's motion for attorney's fees without comment. The court made no finding that the quiet title action was brought without reasonable cause or that the plaintiff lacked a good faith basis for her action, findings that potentially could have supported an award of attorney's fees.

In sum, we conclude that, to the extent that § 47-31 (e) reflects the legislature's intent to create a statutory exception to the American rule, that exception is expressly limited to the reimbursement of statutory costs, and does not authorize a court to award a defendant reasonable attorney's fees. Accordingly, we reverse the judgment of the court as to its granting of the defendant's motion for attorney's fees in the amount of $8377.23.[7]

## II

The plaintiff also claims that the court abused its discretion by denying her request to amend the operative complaint. We disagree.

[7] Our decision to reverse the judgment as to the granting of the motion for attorney's fees has no impact on the court's August 24, 2023 ruling granting the defendant's motion for judgment on the quiet title count.

"Our standard of review of the [plaintiff's] claim is well defined. A trial court's ruling on a motion of a party to amend its complaint will be disturbed only on the showing of a clear abuse of discretion. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [plaintiff's] burden in this case to demonstrate that the trial court clearly abused its discretion. . . .

"A trial court may allow, in its discretion, an amendment to pleadings before, during, or after trial to conform to the proof. . . . Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Internal quotation marks omitted.) *Rodriguez* v. *Hartford*, 224 Conn. App. 314, 325, 312 A.3d 85, cert. denied, 349 Conn. 907, 313 A.3d 512 (2024), and cert. denied, 349 Conn. 907, 313 A.3d 512 (2024).

The plaintiff argues that her request to amend was filed "well within the time frames of the scheduling order to complete necessary action to move this case along . . . [and] would have removed the quiet title aspect of the complaint, which would have instantly diminished any prejudice to the defendant." She further argues that the record contains "a dearth of logic as to why or how the [court] ruled in the manner it did." These arguments fall short of demonstrating a clear abuse of discretion.

Although the court denied the motion to amend without comment and later denied the plaintiff's request for an articulation of its ruling, the court had indicated in sustaining the objection to the motion to amend that it denied the plaintiff's request to amend her complaint "for the reasons articulated in the defendant's objection

. . . ."[8] The defendant objected to the request to amend because it was not filed until after the defendant had sought judgment on the quiet title count, which was the only remaining count in the operative revised complaint. Additionally, the obvious purpose of the amendment was to resurrect the CUTPA count that the plaintiff previously had abandoned after repleading following the granting of the motion to strike the FDCPA count. The plaintiff's suggestion that her request to amend was timely ignores the fact that the plaintiff's November 28, 2022 request to amend came after she had elected to pursue only the quiet title count against the defendant and after the defendant had disclaimed any interest in the property, effectively ending the matter. The plaintiff does not claim that the CUTPA count was excluded from the revised complaint by mistake or inadvertence, and the plaintiff could have sought to amend her complaint earlier. It was well within the court's discretion to deny the plaintiff's request to amend her complaint at this late stage in the proceedings as untimely.

We conclude that the plaintiff has failed to demonstrate that the court abused its discretion in denying her request to amend her complaint. Accordingly, we reject this claim.

III

Finally, the plaintiff claims that the court improperly denied her request to substitute Select as the party

---

[8]Although we have warned that a trial court should refrain from "adopting" the reasoning of a party rather than setting forth in its own words the factual and legal basis for its rulings; see, e.g., *Wendover Financial Services Corp.* v. *Connelly*, 61 Conn. App. 244, 247, 763 A.2d 670 (2000) ("the wholesale adoption by the Superior Court of a party's reasoning in its legal memoranda as the basis for the court's own decision is not a sound practice because it does not afford an appellate court a clear understanding of the reasons underlying the trial court's decision"); we also have held that a court's adoption of a party's reasoning, standing alone, does not compel the conclusion that the court abused its discretion. See *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, 145 Conn. App. 696, 717 n.10, 77 A.3d 165 (2013), aff'd, 315 Conn. 596, 109 A.3d 473 (2015).

defendant because Select "actively engaged in the wrongs complained of" in her complaint. Again, we disagree.

"The addition or substitution of parties to legal proceedings generally is favored in order to permit courts to make timely and complete determinations on behalf of parties with genuine interests in the outcome of controversies brought before them. . . . To that end, our rules of practice contain multiple provisions authorizing courts to substitute parties in a variety of situations as the interests of justice require." (Citations omitted.) *In re David B.*, 167 Conn. App. 428, 441, 142 A.3d 1277 (2016), citing General Statutes §§ 52-107 through 52-110 and Practice Book §§ 9-18 through 9-22. Section 52-107, on which the plaintiff relied in support of her motion, provides in relevant part: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in." See also Practice Book § 9-18 (citing § 52-107 as basis for rule authorizing addition or substitution of parties). "[T]he decision whether to grant a motion for the addition or substitution of a party to legal proceedings rests in the sound discretion of the trial court. . . . In reviewing the trial court's exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness . . . and only if its action discloses a clear abuse of discretion is our interference warranted." (Internal quotation marks omitted.) *Youngman* v. *Schiavone*, 157 Conn. App. 55, 63, 115 A.3d 516 (2015).

As we concluded in part II of this opinion, the court did not abuse its discretion in denying the petitioner's request to amend her complaint solely for the purpose of reviving her previously abandoned CUTPA count and asserting those allegations against a new defendant, Select.[9] Given that judgment already had entered on

---

[9] We reject the plaintiff's argument that she could not have cited in Select earlier in the proceedings because she was unaware of Select

the quiet title count, meaning no counts remained to be adjudicated in this action, the court properly rejected the plaintiff's request to cite in a different party defendant for the purpose of pursuing a claim that she had abandoned. In light of our deferential standard of review, and after due consideration of all arguments advanced by the parties, the plaintiff has failed to convince us that, under the circumstances, the court abused its discretion in denying her motion to substitute.

The judgment is reversed only with respect to the granting of the motion for attorney's fees, the award of attorney's fees is vacated, and the case is remanded with direction to deny the defendant's motion for attorney's fees; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

and the role that it had played in the servicing of her mortgage until she saw Select's name on the documents submitted by the defendant in support of its affidavit of attorney's fees. That argument is belied by the uncontested June 19, 2017 letter from Select to the plaintiff, submitted to the court by the defendant as part of its opposition to the motion to substitute, in which Select identifies itself as the mortgage servicer with respect to the Lee Avenue mortgage.